[Cite as *Hilbert v. Hilbert*, 2016-Ohio-8099.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| WESLEY HILBERT, | : | |
| Plaintiff-Appellant/Cross-Appellee, | : | CASE NOS. CA2015-10-182<br>CA2015-11-185 |
| | : | O P I N I O N |
| - vs - | | 12/12/2016 |
| | : | |
| STEPHANIE A. HILBERT, | : | |
| Defendant-Appellee/Cross-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR11-05-0613

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for appellant/cross-appellee

Nicole M. Stephenson, 30 North "D" Street, Hamilton, Ohio 45013, for appellee/cross-appellant

**PIPER, J.**

{¶ 1}  Plaintiff-appellant/cross-appellee, Wesley Hilbert ("Father"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, ordering him to pay child support. Defendant-appellee/cross-appellant, Stephanie Hilbert ("Mother"), appeals the same trial court's decision awarding Father tax exemptions.

{¶ 2}  The parties were married in 2004 and had two children born issue of their

marriage before divorcing in 2011. The parties agreed to a shared parenting plan, with each parent having the children approximately 50 percent of the time. At first, Father's and Mother's incomes were similar, and each had the children for an equal time. Therefore, neither party was ordered to pay child support, and the court approved a downward deviation to zero from the standard support order.

{¶ 3} In 2013, Mother requested a modification of the child support orders, and the Butler County Child Support Enforcement Agency ("CSEA") performed an administrative review. CSEA recommended that Father pay child support equal to the standard guidelines, without any downward deviation. The trial court reviewed the recommendation, but found that no change of circumstances had occurred to warrant a new support order, and that Father was still entitled to a downward deviation.

{¶ 4} In 2015, Mother again requested a modification of child support, and stated that she was no longer employed. CSEA performed a review, and determined that Father earned $248,222.91 a year, and set his child support obligation at $3,029.97 per month. Father challenged CSEA's determination, and the trial court held a hearing on the matter. A magistrate found that Father's income had been incorrectly determined by CSEA, and set Father's income at $109,322.57 with a corresponding child support obligation of $1,434.27 per month. The magistrate also split the tax exemptions for the children between Mother and Father. Father filed objections to the magistrate's decision specific to the support order and tax exemption determination. The trial court overruled Father's objections regarding child support, but did not address the tax exemption issue.

{¶ 5} Father then filed a motion for clarification, asking the trial court to address his objection to the magistrate's allocation of tax exemptions. The trial court recognized its failure to address the issue, and then issued an order awarding Father both tax exemptions every year. Father now appeals the trial court's child support orders, and Mother appeals the

trial court's determination of tax exemption entitlement.

{¶ 6}   Father's First Assignment of Error:

{¶ 7}   THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT DETERMINED HIS INCOME FOR PURPOSES OF CHILD SUPPORT TO BE $109,322.57 PER YEAR.

{¶ 8}   Father argues in his first assignment of error that the trial court erred in determining his income for purposes of the child support determination.

{¶ 9}   It is well-established that the purpose of the child support system is to protect children and their best interests.  *Mannerino v. Mannerino*, 12th Dist. Butler No. CA2010-08-210, 2012-Ohio-1592, ¶ 9.  To that end, the trial court possesses considerable discretion in child support matters.  *Brown v. Brown*, 12th Dist. Butler No. CA2014-09-184, 2015-Ohio-1930, ¶ 10.  Therefore, matters involving child support are reviewed under an abuse of discretion standard.  *Van Osdell v. Van Osdell*, 12th Dist. Warren No. CA2007-10-123, 2008-Ohio-5843, ¶ 20.  More than mere error of judgment, an abuse of discretion requires that the trial court's decision was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 10}   R.C. 3119.01(C)(5)(a) defines "income" for purposes of calculating child support as "the gross income of the parent."  *Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 10.  "'Gross income' is the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in [R.C. 3119.05(D)]; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest, and all other sources of income." R.C. 3119.01(C)(7); *Marron v. Marron*, 12th Dist. Warren No. CA2013-11-109, 2014-Ohio-2121, ¶ 12.  According to R.C. 3119.01(C)(13), self-generated income means:

gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

{¶ 11} A court has authority to rely on information other than a tax return in order to examine business expenses and deductions, especially if the party is self-employed, and should consider living expenses or other personal use of business funds with "sharp scrutiny of all available records to prevent avoidance of child support." *Marder v. Marder*, 12th Dist. Clermont No. CA2007-06-069, 2008-Ohio-2500, ¶ 64.

{¶ 12} We begin by noting that the magistrate found Father's testimony lacking credibility regarding his self-employment income, as well as business expenses. The magistrate noted in its opinion,

> Before discussing the specifics of Father's mistake of fact issues, the court is compelled to comment on the credibility, or lack thereof, of Father's testimony. At the beginning of Father's direct testimony, he stated his name and current address. Having considered the matter, the court finds this to be the only part of Father's testimony that was believable or credible.

{¶ 13} The magistrate also stated that Father's claims regarding his business profits was "spurious," and called Father's testimony regarding his net profit "incredulous." The magistrate also stated that Father's claims regarding his expenses was "utterly absurd." Later in the magistrate's opinion, the magistrate stated, "once you get past the smoke and mirrors of Father's claim, it is clear to the court Father is * * * hiding income that should otherwise be considered for child support purposes." Further, the magistrate referred to Father's explanation of business profits and expenses as "voodoo business accounting practices."

{¶ 14} During its independent review, the trial court referenced the magistrate's findings as "colorful," but nonetheless agreed with and adopted the findings regarding Father's income. We agree with the trial court that the magistrate's findings were animated and somewhat dramatic. Even so, we also agree with the trial court that the evidence deduced at the hearing supports the magistrate's decision that Father's income should be calculated at a higher amount than the approximate $17,000 per year Father claimed as his salary. As such, and despite Father's argument on appeal that the magistrate's language tends to "obfuscate" the problems contained in the magistrate's opinion, we find that Father suffered no prejudice from the magistrate's "colorful" explanation of its determination that Father's testimony lacked credibility, especially where the trial court performed an independent review of the facts and evidence.

{¶ 15} Regarding Father's salary, the record demonstrates that Father is self-employed and that he grossly underestimated his salary for purposes of child support calculations. The company Father owns and operates is organized as a sole proprietorship. Father submitted tax information that indicated the business had gross receipts of $287,762. Even so, Father claimed that his business expenses totaled $226,673, and the net profit for the year was a little over $30,000. However, the magistrate considered that 94 percent of Father's business expenses were identified as "other," and that Father did not submit any documents in support of the "business necessity or reasonableness" of the expenditures as specifically connected to Father's business. While Father offered testimony that the expenses were legitimately related to his business, the magistrate discounted this testimony as "unsubstantiated" and "self-serving."

{¶ 16} Father admitted in his testimony that he regularly used his business' bank account to pay for his personal expenses, and that he withdrew large cash amounts from his business' bank account for his personal use. When asked why he withdrew cash amounts

- 5 -

ranging from $100-$500 at a time, Father responded that it was for "pop, water, whatever, I don't know." Father also testified that he used funds from his business account to pay for personal items such as a passport, a veterinarian bill, massages, hats, flowers, liquor, and a limousine rental. Moreover, bank records for the business account show deposits in excess of the gross income the business claimed. The magistrate relied on these undisputed facts to conclude that not all of Father's claimed expenses were truly related to the business and that his accounting was not an honest representation of his true salary.

{¶ 17} The magistrate also noted that Father's personal expenses, such as mortgage interest and property taxes, far exceeded the amount Father claimed he earned each year, $17,735. The magistrate concluded, "Father offered no explanation, credible or otherwise, to account for the disparity between his living expenses and claimed income." Moreover, and despite having an alleged income that did not meet his expenses, Father bought two vehicles that year, paying cash for both. Father also testified that he went on vacation to Cancun, Florida, and a cruise, and that he gambles between $100-$200 monthly. Father also owns a rental property, and rather than rent it, he used it for storage. Father also testified that he paid for some of his girlfriend's schooling.

{¶ 18} In total, Father wrote checks to himself totaling $80,675, which the magistrate treated as income. The magistrate concluded that Father did not deny that he wrote the checks to himself, and that Father offered "no credible explanation as to the business purpose of these payments." As such, the magistrate added $80,675 to the total claimed as salary by Father, and determined that Father's income for child support calculation purposes was $109,322.57. After an independent review, the trial court adopted the magistrate's finding in full.

{¶ 19} After reviewing the record, we find that the trial court did not err in calculating Father's child support obligation as it did. The record clearly indicates that Father did not

offer a complete and credible accounting of his self-employment salary, and that he earned much more than the $17,735 he claimed. The trial court took into consideration that some of the business expenses were legitimate, and also relied on evidence in the record when adding $80,675 to Father's claimed income. As such, we find no abuse of discretion in the trial court's determination of Father's income. Father's first assignment of error is therefore overruled.

{¶ 20} Father's Second Assignment of Error:

{¶ 21} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT DID NOT IMPUTE INCOME TO APPELLEE AT A LEVEL COMMENSURATE WITH HER EARNING CAPACITY.

{¶ 22} Father argues in his second assignment of error that the trial court erred by not imputing income to Mother, who was unemployed at the time of the hearing.

{¶ 23} A trial court's decision specific to whether a parent is voluntarily underemployed will not be disturbed on appeal absent an abuse of discretion. *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 13-14. For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b). Potential income includes imputed income that a trial court determines the parent would have earned if fully employed based upon the criteria set forth in R.C. 3119.01(C)(11)(a)(i)-(xi), which includes the parent's prior employment experience, education, skills and training, employment availability, and local wages. Before a trial court may impute income to a parent, however, it must first find that the parent is voluntarily unemployed or voluntarily underemployed. R.C. 3119.01(C)(11); *Kessler* at ¶ 13. The parent who claims the other parent is voluntarily underemployed bears the burden of proof. *Reynolds-Cornett v. Reynolds*, 12th Dist. Butler No. CA2013-09-175, 2014-Ohio-2893, ¶ 10.

{¶ 24} The record indicates that Mother, a former social worker, lost her job at a child services agency. Mother provided a letter from her former employer, which stated that Mother's position at the agency had been "abolished," and that she was laid off effective November 10, 2014. Mother's income, as figured by the magistrate for child support purposes, was therefore comprised of unemployment compensation.

{¶ 25} Father did not submit any evidence indicating that Mother was voluntarily unemployed. In fact, during his testimony, he acknowledged that Mother lost her job involuntarily. The law is well-settled that the parent who claims the other parent is voluntarily underemployed bears the burden of proof, and Father failed to present any evidence that Mother was voluntarily unemployed. As such, Father's second assignment of error is overruled.

{¶ 26} Father's Third Assignment of Error:

{¶ 27} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT DID NOT ORDER A DOWNWARD DEVIATION REGARDING CHILD SUPPORT.

{¶ 28} Father argues in his third assignment of error that the trial court erred in not giving him a downward deviation in child support.

{¶ 29} Pursuant to R.C. 3119.22, a trial court may deviate from the standard child support order if, after considering the factors and criteria set forth in R.C. 3119.23, such an order would be unjust or inappropriate and would not be in the best interest of the children. *Brown v. Brown*, 12th Dist. Butler No. CA2014-09-184, 2015-Ohio-1930, ¶ 7. In determining if a deviation is in the best interest of the children, R.C. 3119.23 sets forth a number of factors that the court may consider. *Id.* Pertinent to the case at bar, such factors include: "extended parenting time or extraordinary costs associated with parenting time; disparity in income between parties or households, the relative financial resources, other assets and

resources, and needs of each parent," as well as any other factor for consideration. R.C. 3119.23(D), (G), (K), and (P).

{¶ 30} Although a trial court is permitted to deviate from the standard child support worksheet upon finding that one or more of the factors listed in R.C. 3119.23 are present, a party is not automatically entitled to a downward deviation merely because a factor is present. *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 18. Absent an abuse of discretion, a trial court's decision on whether or not to deviate from the child support guidelines will not be reversed. *Kitchen v. Kitchen*, 12th Dist. Butler No. CA2006-01-013, 2006-Ohio-6542, ¶ 10.

{¶ 31} The magistrate reviewed the relevant factors, and determined that a downward deviation was not in the children's best interests. Instead, the court noted that while parenting time remained essentially the same so that each parent had the children about 50 percent of the time, other circumstances had changed since the deviation was initially granted. Specifically, the record indicates that since the time of the deviation, Mother and Father's income is no longer similar, and Father's income far exceeds Mother's. The court, establishing Mother's adjusted gross income as $14,820, concluded that Father, whose adjusted gross income is $109,322.57 a year, is in a "much better" position to handle any additional costs of having the children more than the standard parenting order given his high salary.

{¶ 32} After reviewing the record, we find that the trial court did not abuse its discretion in finding that a deviation was not in the children's best interest. The amount of time the children spend with their parents, although it has not changed since the time of the deviation, is but one factor for consideration, and the record patently indicates that Father's salary far exceeds Mother's. Moreover, the record indicates that Father lives with someone who helps pay expenses, thus making his financial capacity and ability to pay child support

even greater. As such, and finding no abuse of discretion, Father's third assignment of error is overruled.

{¶ 33} Mother's Cross-Assignment of Error:

{¶ 34} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT BY MODIFYING THE ORDER GRANTING FATHER THE RIGHT TO CLAIM BOTH CHILDREN AS DEPENDENTS AND RECEIVE BOTH TAX EXEMPTIONS.

{¶ 35} Mother argues in her cross-assignment of error that the trial court lacked jurisdiction to award the tax credits to Father while an appeal of the trial court's decision was pending before this court.

{¶ 36} The record indicates that the trial court did not initially address Father's objection to the magistrate's decision to split the tax exemptions between the parties. Father then moved the court to clarify the tax exemption decision, and in the meantime, Father perfected his appeal with this court. While Father's appeal was pending, the trial court held a hearing on the tax exemption issue, and recognized that it had failed to address the issue when overruling Father's objections. As such, the trial court considered the issue at the hearing, and calculated which party would benefit more from the tax exemption, finding that the best interests of the children would be served by awarding the exemptions to Father.

{¶ 37} As a general rule, when a notice of appeal is filed, the trial court is divested of jurisdiction except to take action in aid of the appeal. *Webb v. Pewano, Ltd.*, 12th Dist. Fayette App. Nos. CA2008-10-036 and CA2008-12-042, 2009-Ohio-2629, ¶ 29. However, the trial court does retain jurisdiction over issues not inconsistent with the appellate court's power to review, affirm, modify, or reverse the appealed judgment. *Foppe v. Foppe*, 12th Dist. Warren App. Nos. CA2008-10-128 and CA2009-02-022, 2009-Ohio-6926.

{¶ 38} Although Father's appeal was pending at the time the trial court issued its decision regarding the tax exemptions, we find that the trial court had jurisdiction to issue the

order. The question of tax exemptions was not before this court on Father's appeal, and therefore, the trial court's order did not impact this court's power to review, affirm, modify, or reverse the appealed judgment. Instead, the issues raised by Father were specific to the way in which the trial court determined his child support obligation and had nothing to do with the tax exemption.[1]

{¶ 39} The Internal Revenue Code creates a presumption in favor of awarding the tax exemption to the residential parent. *Boyer v. Hacker*, 12th Dist. Brown No. CA2013-08-009, 2014-Ohio-760, ¶ 8. In shared parenting arrangements, both parties are, in essence, deemed to be residential parent of the children, and the trial court must allocate the tax dependency exemption based on the children's best interest. *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 40.

{¶ 40} Specific to allocating tax exemptions, the best interest of the children is furthered when the allocation of the exemption produces a net tax savings for the parents. *Tuttle v. Tuttle*, Butler App. Nos. CA2006-07-176 and CA2006-07-177, 2007-Ohio-6743, ¶ 21. A net tax savings to the parent usually equates to more money being available for the care of the child, and is one of the five factors that a court is required to weigh according to R.C. 3119.82. *Rainey* at ¶ 40. Other factors include, "the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." This court reviews a trial court's decision allocating tax exemptions for an abuse of discretion. *Rainey* at ¶ 38.

---

1. Mother also alleges that the trial court's decision was barred by res judicata. However, and as previously stated, the trial court had not yet entered a final decision regarding the tax exemption issue, and recognized as much at the hearing.

**{¶ 41}** The record indicates the trial court properly considered the statutory factors before determining that awarding the tax exemptions to Father was in the children's best interest. Before determining that Father should have the tax exemptions, the trial court specifically noted that it had done a de novo review of the issue, including consideration of the R.C. 3119.82 factors, and the record indicates the trial court held a hearing on the issue. During this hearing, the trial court determined that the net tax benefit would be greater for Father, and minimal for Mother. As such, we find no abuse of discretion in the trial court's order regarding the tax exemptions. Mother's cross-assignment of error is therefore overruled.

**{¶ 42}** Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.