[Cite as *Rummelhoff v. Rummelhoff*, 2020-Ohio-2928.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EMILY B. RUMMELHOFF, | : | APPEAL NO. C-1900355 |
| | | TRIAL NO. DR-1601871 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DAVID P. RUMMELHOFF, | : | |
| Defendant-Appellant. | : | |

Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 13, 2020

*Frost Brown Todd LLC* and *Elizabeth R. Murray*, for Plaintiff-Appellee,

*Kroener Hale and Penick* and *Thomas E. Meade*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Defendant-appellant David P. Rummelhoff appeals the judgment of the Hamilton County Court of Common Pleas, Domestic Relations Division, overruling his objections to the adoption of plaintiff-appellee Emily Rummelhoff's proposed shared-parenting plan, his motion to compel, discovery motions, motions for contempt, motion for a custody and psychological evaluation, and the calculation of child support.

{¶2} We conclude that the trial court did not abuse its discretion in adopting Emily's shared-parenting plan and overruling the various motions to compel. However, we agree that the court erred in deviating from the schedule and worksheet to calculate the child-support amount without strictly complying with R.C. 3119.23 and 3119.24. Accordingly, we reverse the court's child-support award and remand the cause to the domestic relations court for a recalculation of David's child-support award, and affirm the judgment in all other respects.

## Factual Background

{¶3} Emily and David Rummelhoff were married in December 2008, and three children were born during their marriage. During the marriage, David was the primary caregiver for the children while Emily worked full-time. David worked part-time from the home as a freelance Web developer. On October 16, 2016, Emily filed a complaint for divorce. In her motion for temporary orders, she noted that she was requesting shared parenting.

{¶4} David filed an answer requesting that her complaint be dismissed. In his motion for temporary orders, he noted that he did not object to shared parenting. The parties reached an agreement on a number of issues related to the dissolution of their marriage, but were unable to reach an agreement as to custody of their

children.

{¶5} On December 5, 2017, the court ordered a parenting investigation pursuant to R.C. 3109.04(C). Patrick Magill, a social worker in the Dispute Resolution Department, issued a comprehensive report on April 10, 2018. He recommended shared parenting with equal time for both parents following a two-week rotating schedule. Magill also suggested that the parents use OurFamilyWizard.com to collaborate more successfully. The trial court requested both parties to submit a shared-parenting plan. The parties attempted to agree on a plan, but those efforts failed, and a hearing on the custody, support, and parenting issues began on August 23, 2018.

{¶6} Magill testified at length regarding his report and recommendation for shared parenting. His proposed schedule recommended that Emily have the children on Monday and Tuesday in week one, and then Wednesday and Thursday the following week, with the parents alternating weekends. Magill was not opposed to Emily having the children every Monday and Tuesday to accommodate her work schedule. Initially, he had recommended that David would take the children to Mass every Sunday because he is a devout Catholic and Emily is not. However, he testified that it would also be appropriate for Emily to take them to a service of her choice on her parenting weekends. After Magill's testimony, the trial was continued until September 18, 2018.

{¶7} On September 4, 2018, Emily filed a proposed shared-parenting plan. David filed a motion in opposition to Emily's shared-parenting plan asserting that it was not timely filed because it was not filed 30 days prior to trial.

{¶8} At the next hearing, Emily testified that she believed shared parenting

was in the best interest of the children, and that she was capable of working with David, cooperating with him, and making decisions together. She also explained that the shared-parenting plan contained a paragraph about safely storing the guns in her home because David had added the paragraph during their lengthy attempts to agree to a shared-parenting plan.

{¶9} On cross-examination, she reiterated that she would like to work with David to implement the shared-parenting plan because she believed it was in the best interest of the children. Emily was also questioned about her counseling and mental health in 2016. In September and October of 2016, David had listened to two phone messages from her counselor at Professional Pastoral Institute ("PPI"), and based on those messages, he alleged that she was suicidal at that time. Emily testified that she had never heard the messages, but that her counselor had misunderstood their conversation. She further testified that had she known about her counselor's concern, she would have called her immediately to clear up the misunderstanding.

{¶10} David had initially requested the magistrate to compel Emily to sign a release form so he could obtain her records from PPI. He withdrew his request, believing that Emily would sign a release form for him, but she did not. Emily testified that she had signed a release form, and her records were given to Magill for the parenting investigation. Because Magill had them, she did not believe it was necessary for David to have them. David renewed his motion to compel Emily to sign a release form so he could obtain her counselor's notes.

{¶11} The magistrate asked David to explain the relevance of the notes, and he explained that he wanted to use the notes to impeach Emily. The court denied the motion because the counselor who made the notes would not be available to

interpret the notes, and without her testimony, the notes had no probative value. The magistrate further stated that the counselor's interpretation of Emily's thoughts and feelings was not relevant because she had already testified about her statements to the counselor. David then asked for leave to subpoena the counselor, who currently resided in Virginia. The court denied the request because David had had ample time to subpoena the witness prior to trial.

{¶12} David testified that it would be difficult to coparent with Emily due to unsubstantiated abuse allegations that she had made to The Hamilton County Department of Job and Family Services and in her affidavit for temporary orders. He further testified that they were unable to cooperate and make joint decisions, and that he believed it would be in the children's best interest for him to remain the sole custodian and to engage in mediation to resolve coparenting disagreements.

{¶13} At the next trial date, David requested a continuance because Emily's counselor notified him that she would not comply with the subpoena to testify that day. David wished to depose her in Virginia or arrange for a video conference. The court denied the request due to the delay and additional expense. After the denial, David finished his testimony.

{¶14} The magistrate issued a detailed decision granting Emily's request for shared parenting after considering all of the factors in R.C. 3109.04. The court noted that the parties were unable to submit a shared-parenting plan prior to trial, and that he requested both parties to submit a plan, but David declined to submit a plan. The court ordered Emily to pay child support in the amount of $150.00 per month per child. The court deviated from the child-support schedule in the amount of $6,052, noting "equal parenting time" on the worksheet.

{¶15} David filed objections challenging whether the magistrate was prohibited from adopting Emily's untimely-filed shared-parenting plan, whether the magistrate properly considered the statutory factors, whether the magistrate erred in denying his discovery motions, whether the magistrate erred in failing to rule on his contempt motion, and whether the magistrate erred in his child-support award. The court reviewed the complete record of the proceedings, heard oral arguments, and overruled the objections.

{¶16} On appeal, David raises five assignments of error arguing that the court erred by adopting the untimely-filed shared-parenting plan, adopting a shared-parenting plan that was different than the one filed by Emily, denying his motion to compel Emily's counseling notes, failing to address all motions, and granting a child-support deviation.

## The Shared-Parenting Plan

{¶17} We will address his first two assignments of error together because both challenge the adoption of Emily's shared-parenting plan. In his first assignment of error, David contends that the trial court erred by adopting a shared-parenting plan that had not been timely filed. A trial court's decision to adopt a shared-parenting plan is reviewed under an abuse-of-discretion standard. *See Siegel v. Seigel*, 1st Dist. Hamilton No. C-140296, 2015-Ohio-1710, ¶ 7. An abuse of discretion is "more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶18} R.C. 3109.04 governs the allocation of parental rights and responsibilities, including shared parenting, in divorce proceedings. R.C.

3109.04(G) requires a party in a divorce action to file a shared-parenting plan at least 30 days before the hearing on the issue of parental rights and responsibilities. As this court has previously recognized, this requirement is directory and not mandatory. *See Siegel* at ¶ 8. Therefore, where a shared-parenting plan is not filed within the statutory deadline, the critical inquiry is whether a party had an adequate opportunity to respond to the plan. *Id.* at ¶ 10.

{¶19} Although Emily filed her parenting plan after the first day of trial, David had an adequate opportunity to address the proposed plan and present evidence at the hearings on September 18, 2018, November 28, 2018, and January 8, 2019.

{¶20} Moreover, the record demonstrates that David was aware throughout the pendency of the case that Emily desired shared parenting. In her initial motion for temporary orders filed in October 2016, she noted that she was requesting shared parenting. The parenting investigation, submitted in April 2018, recommended that the parties enter into a shared-parenting plan. Emily testified that she and David had attempted to agree on a shared-parenting plan, and she included a provision initially recommended by him in her plan. The court acknowledged that the parties were unable to file their shared-parenting plans prior to trial, and that the court requested each party to file a plan. David declined to file a plan, and instead testified that he wished to be named the sole residential parent.

{¶21} Therefore, David cannot demonstrate that the court erred in accepting Emily's late-filed proposed parenting plan or demonstrate that he was denied an adequate opportunity to respond to the plan. Accordingly, we overrule the first assignment of error.

{¶22} In his second assignment of error, David argues that the trial court erred by adopting a shared-parenting plan that had not been filed with the court. He claims that the plan adopted by the magistrate was not the same plan that Emily submitted. Because David did not file an objection on this basis, he has waived all but plain error. *See Neu v. Neu*, 1st Dist. Hamilton No. C-140170, 2015-Ohio-1466, ¶ 1.

{¶23} However, David does not specify how the parenting plan adopted by the court differed from the plan Emily filed. The appellant bears the burden of "identifying in the record the error on which [an] assignment of error is based." App.R. 12(A)(2). Consequently, we disregard this assignment of error. *See id.*

### The Motion to Compel

{¶24} In his third assignment of error, David contends that the court erred by denying his motion to compel Emily to produce her mental-health records. We review decisions on motions to compel for an abuse of discretion. *See State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998).

{¶25} Emily testified that she signed a release form to release the records to Magill for the parenting investigation. Because Magill had them, she did not believe it was necessary for David to have them. The magistrate denied the motion because the counselor who made the notes would not be available to interpret the notes, and without that testimony, the notes had no "probative value." He further concluded that the counselor's interpretation of Emily's thoughts and feelings was not relevant because Emily had testified about her statements to the counselor. Based on this record, we cannot conclude that the trial court abused its discretion in overruling the motion to compel.

{¶26} David further argues that the denial of the records prevented the court from considering Emily's mental health as required by R.C. 3909.04(F)(1)(e). However, PPI provided records to Magill for the purposes of the parenting investigation. Magill reviewed the records and discussed her mental health in his report. Magill also testified that he had no concerns with the mental health or mental stability of either party. Based on this record, we cannot conclude that the court did not consider her mental health as required by R.C. 3909.04(F)(1)(e). We overrule the third assignment of error.

The Outstanding Motions

{¶27} Next, David argues that the court erred by not ruling on his discovery motions, contempt motions, and motions for a custody evaluation and a psychological evaluation, and therefore, the judgment was an invalid final order. With respect to the contempt motions, the motions were not properly before the magistrate at the time of trial. Ultimately, the trial court ruled upon the motions in its entry overruling David's objections.

{¶28} When a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it. *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150 (1994); *Newman v. Al Castrucci Ford Sales*, 54 Ohio App.3d 166, 561 N.E.2d 1001 (1st Dist.1998). With respect to David's remaining motions, we may presume that the court overruled all of them. *See id.*

{¶29} Therefore, the judgment was a final, appealable order, and we find no merit to David's fourth assignment of error.

Child-Support Deviation

**{¶30}** In his fifth assignment of error, David contends that the trial court erred by deviating the child-support award contrary to R.C. 3119.22. A trial court's decision regarding child-support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶31}** When calculating child support, a court must use the worksheet required by former R.C. 3119.022,[1] in effect at the time the trial court calculated the amount of child support. The calculated amount is rebuttably presumed to be the correct amount. *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph one of the syllabus; R.C. 3119.022.

**{¶32}** If the calculated amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstance of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount." R.C. 3119.24(A). If the court deviates, it "shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination." R.C. 3119.23 lists the factors a court may consider in determining whether to grant a deviation. "If the court grants a deviation based on division (P) of this section, it shall specifically state in the order the facts that are the basis for the deviation." R.C. 3119.23(P).

---

[1] H.B. 366, which became effective on March 28, 2019, changed the law governing deviations from the child-support obligations required under shared-parenting plans and created a new standard worksheet form.

**{¶33}** A court-ordered deviation from the schedule and worksheet is not permitted absent full and strict compliance with the statutory requirements. *See Rock v. Cabral*, 67 Ohio St.3d 108, 110, 616 N.E.2d 218 (1993); *Marker v. Grimm*, 65 Ohio St.3d 139, 141-142, 601 N.E.2d 496 (1992). In order to deviate from the guidelines, the court must "determine on the record that the 'actual annual obligation' would be unjust or inappropriate and would not be in the best interest of the children. Further, if the court makes such a determination, the court must provide findings of fact to support that determination." *Ross v. Ross*, 12th Dist. Preble No. CA2004-07-009, 2005-Ohio-2922, ¶ 27.

**{¶34}** In this case, the court did not make a finding that the actual obligation was unjust and not in the best interest of the children. The court simply noted on the worksheet "equal parenting time." Because the domestic relations court did not make the required determination that the obligation was unjust and not in the best interest or factual findings to support such a deviation, we reverse that portion of the court's decision. *See id.* We sustain David's fifth assignment of error.

### Conclusion

**{¶35}** The child-support award is reversed, and the court's judgment is affirmed in all other respects. Upon remand, the trial court shall compute the amount in accordance with the newly revised statutes and child-support worksheet.

Judgment affirmed in part, reversed in part, and cause remanded.

**BERGERON** and **CROUSE, JJ.**, concur.

Please note:

The court has recorded its own entry this date.