[Cite as *Rummelhoff v. Rummelhoff*, 2021-Ohio-4579.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EMILY B. RUMMELHOFF, | : | APPEAL NOS. C-210112 |
| | | C-210176 |
| Plaintiff-Appellee, | : | TRIAL NO. DR-1601871 |
| vs. | : | |
| | | *O P I N I O N.* |
| DAVID P. RUMMELHOFF, | : | |
| Defendant-Appellant. | : | |

Appeals From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: December 29, 2021

*Murray Law LLC* and *Elizabeth Murray,* for Plaintiff-Appellee,

*Kroener Hale LLC* and *Thomas E. Meade*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant David P. Rummelhoff appeals the judgments of the Hamilton County Court of Common Pleas, Domestic Relations Division, raising eight assignments of error for our review. In sum, David argues the court erred by: denying his motion for relief from judgment; considering plaintiff-appellee's motion to have defendant declared vexatious; calculating child support incorrectly; awarding attorney fees to plaintiff-appellee; and refusing to assign a new magistrate. For the following reasons, we affirm the judgments of the domestic relations court in part, reverse them in part, and remand this cause for further proceedings consistent with the law and this opinion.

### Factual and Procedural Background

{¶2} This is the second appeal in the divorce case between plaintiff-appellee Emily B. Rummelhoff and defendant-appellant David P. Rummelhoff. In his first appeal to this court, David argued that the trial court abused its discretion by adopting Emily's shared-parenting plan, overruling his motion to compel Emily's mental-health records, and incorrectly calculating the child-support obligation. *Rummelhoff v. Rummelhoff*, 1st Dist. Hamilton No. C-190355, 2020-Ohio-2928 (hereinafter "*Rummelhoff I*"). This court reversed the trial court's child-support award and remanded the cause for the trial court to "compute the [child-support] amount in accordance with the newly revised statutes and child-support worksheet." *Id.* at ¶ 35. We affirmed the trial court's judgment in all other respects. *Id.*

{¶3} On remand, David filed a Civ.R. 60(B) motion for relief from judgment regarding the release of Emily's mental-health records, which the trial court denied. Emily filed a motion to have David declared a vexatious litigator, which the trial

2

court also denied. Emily filed a motion for attorney fees, which the trial court granted. The trial court also denied David's motion to assign a new magistrate to the case after David accused the magistrate of ex parte communications. Pursuant to this court's remand order, the trial court issued a revised child-support-obligation order. All of these issues are before us in this second appeal.

### 1st Assignment of Error: Appellant's Civ.R. 60(B)(5) Motion

{¶4}   David's first assignment of error concerns his efforts to compel the release of Emily's mental-health records. He argues that the trial court erred in denying his Civ.R. 60(B)(5) motion for relief from judgment.

{¶5}   A trial court's ruling on a Civ.R. 60(B) motion is reviewed for an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). "Abuse of discretion occurs when 'a court exercise[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.' " *State v. Austin*, 1st Dist. Hamilton Nos. C-210140 and C-210141, 2021-Ohio-3608, ¶ 5, quoting *Johnson v. Abdullah*, Slip Opinion No. 2021-Ohio-3304, ¶ 35. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). " '[C]ourts lack the discretion to make errors of law.' " *Austin* at ¶ 5, quoting *Johnson* at ¶ 39.

{¶6}   A brief procedural history is necessary to understand the Civ.R. 60(B) motion. In *Rummelhoff I*, this court held that the trial court did not err in denying David's motion to compel Emily's mental-health records. *Id.* at ¶ 25. We also held that the trial court appropriately considered the mental health of the parties as required by statute. *Id.* at ¶ 26. Following this court's decision in *Rummelhoff I*, David filed an application for reconsideration and a motion to certify a conflict to the

3

Ohio Supreme Court on May 21, 2020—both focusing on compelling Emily's mental-health records. On June 24, 2020, this court denied both. On July 14, 2020, after this court denied David's motion for reconsideration, David filed an "addendum" to his application for reconsideration, citing *Torres Friedenberg v. Friedenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, 161 N.E.3d 546, as an "intervening" Ohio Supreme Court case that supported his motion to compel. Then, on July 27, 2020, David filed a notice of appeal with the Ohio Supreme Court, but the court declined jurisdiction. David filed a motion for reconsideration, which the court denied on December 15, 2020. On December 22, 2020, David filed a Civ.R. 60(B) motion for relief from judgment in the trial court, which it denied.

{¶7} David argued that he was entitled to Civ.R. 60(B)(5) relief due to the "intervening" decision of *Friedenberg*, which he claims supports his argument that his motion to compel Emily's mental-health records should have been granted. Specifically, he argued that he had a right to discover her mental-health records and that without the records, the trial court did not satisfy the R.C. 3109.04(F)(1)(e) requirement to consider the mental health of the parties in determining child custody.

{¶8} However, David's motion was properly denied because *Friedenberg* is not an intervening decision. An intervening decision "is one which states a rule of law in conflict with the earlier mandate." *Clements v. Ohio Hosp. Ins. Co.*, 5th Dist. Stark No. 2004CA00265, 2005-Ohio-1956, ¶ 32. In *Friedenberg*, the Ohio Supreme Court held that, "[a]lthough communications between a physician and patient are generally privileged under R.C. 2317.02(B)(1), [the] filing of [a] divorce action, with claims for child custody and spousal support, triggered the R.C. 2317.02(B)(1)(a)(iii) exception

4

to the privilege for communications that relate causally or historically to physical or mental injuries relevant to issues in the divorce action." *Friedenberg* at ¶ 39.

{**¶9**}   In *Rummelhoff I*, this court held that the trial court did not abuse its discretion in refusing to compel the release of Emily's mental-health records to David and his counsel. *Rummelhoff I*, 1st Dist. Hamilton No. C-190355, 2020-Ohio-2928, at ¶ 25. But neither this court nor the trial court held that Emily's mental-health records were privileged or irrelevant to the issues in the divorce proceeding. In fact, the record showed that Emily's mental-health records were released to, and reviewed by, the social worker who conducted the parenting investigation. The records were also discussed in his report. Thus, we held that the trial court properly considered Emily's mental health as required by R.C. 3109.04(F)(1)(e).

{**¶10**}   *Friedenberg* does not stand for the proposition that a party's mental-health records must be turned over to the opposing party in a divorce proceeding under all circumstances. Because *Friedenberg* does not state a rule of law in conflict with *Rummelhoff I*, it is not an intervening decision.

{**¶11**}  David's Civ.R. 60(B) motion was simply an attempt to relitigate the issue of Emily's mental-health records, which was already decided in *Rummelhoff I*. The trial court did not abuse its discretion by denying the motion. The first assignment of error is overruled.

### *2nd Assignment of Error: Motion to have Defendant Declared a Vexatious Litigant*

{**¶12**}  On January 8, 2021, Emily filed a motion to have the defendant declared a vexatious litigant under R.C. 2323.52 for David's numerous motions and appeals that, she argued, were intended to harass her. The court denied the motion. Nevertheless, in David's second assignment of error, he argues the trial court erred

by even considering the merits of the motion. He contends that in order to have a party declared a vexatious litigant, R.C. 2323.52 requires a party to commence a civil action by filing a complaint. He claims that filing a motion in a pending case does not satisfy the requirements of the statute. He argues that the trial court erred by considering and then denying the motion, instead of acknowledging its lack of authority to consider the motion.

{¶13} It is well-settled in Ohio that courts will not issue advisory opinions. *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). To that end, courts must avoid "giving opinions on abstract propositions." *Id.* Courts must also avoid ruling on an appeal that is moot. *Paige v. Ohio High School Athletic Assn.*, 2013-Ohio-4713, 999 N.E.2d 1211, ¶ 7-8 (1st Dist.), citing *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910). A case is moot "if at any stage there ceases to be an actual controversy between the parties." *Id.* at ¶ 8.

{¶14} David argues that "considering and issuing a decision on a null motion* * * leaves open the door for Plaintiff to file the same frivolous motion in the future." However, because the motion was denied, there is no actual controversy and the issue is moot. Any ruling on this issue would be an advisory opinion. If the trial court were to grant a vexatious litigator motion in the future, David could appeal the issue at that time. David's second assignment of error is overruled.

### 3d, 4th, 5th, and 6th Assignments of Error: Child Support Deviations

{¶15} In his third, fourth, fifth, and sixth assignments of error, David takes issue with the trial court's decision to deviate downward from the guideline child support by a total of $612.17 per month.

{¶16} "A trial court's decision regarding child-support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Rummelhoff I,* 1st Dist. Hamilton No. C-190355, 2020-Ohio-2928, at ¶ 30, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶17} When determining the child-support obligation, courts are directed to refer to the basic child-support schedule to find the guideline support amount using the combined income of the parties. R.C. 3119.02. Then, courts may deviate from that guideline amount if the court determines that, based on the factors in R.C. 3119.23, the amount "would be unjust or inappropriate and therefore not be in the best interest of the child." R.C. 3119.22. This determination "must be supported by findings of fact and must be journalized." *Carr v. Blake*, 1st Dist. Hamilton No. C-990174, 2000 WL 192138, *5 (Feb. 18, 2000), citing *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph three of the syllabus; *Ross v. Ross*, 12th Dist. Preble No. CA2004-07-009, 2005-Ohio-2922, ¶ 27 (following *Marker*).

{¶18} The trial court's $6,052 annual deviation from the child-support schedule was at issue in *Rummelhoff I. Rummelhoff I* at ¶ 14. We held that the court's notation of "equal parenting time" on the child-support worksheet as the reason for the deviation was insufficient and we remanded the cause with the following instructions:

> Because the domestic relations court did not make the required determination that the obligation was unjust and not in the best interest or factual findings to support such a deviation, we reverse that portion of the court's decision.

* * *

Upon remand, the trial court shall compute the amount in accordance with the newly revised statutes and child-support worksheet.

*Id.* at ¶ 34-35.

{¶19} On remand, the magistrate noted on the support worksheet that there was a downward deviation of $505.95 "[f]or 3119.23 factors (monthly amount)" and $106.22 "[f]or 3119.231 extended parenting time (monthly)." In the attached decision, the magistrate wrote:

The above amount deviates downward from guideline support in the amount of $505.95 for factors in O.R.C. §3119.23 and $106.22 for factors in O.R.C. §3119.231 because the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and not in the best interest of the children. The total deviation amounts to $612.17. Specific factors in O.R.C. §3119.23 that the Magistrate reviewed were, (E) the relative financial resources of the parties in that Mr. Rummelhoff has the ability to earn more than he currently was earning; (I) significant in kind contributions from Ms. Rummelhoff including health insurance costs.

{¶20} In the third assignment of error, David argues that the trial court erred as a matter of law and abused its discretion by adopting the magistrate's child-support order, which he claims exceeded the scope of the remand order. David raises several arguments in this assignment of error, which contend that the trial court either did not comply with or exceeded the scope of the remand order. We address each in turn.

**The basic support schedule**

**{¶21}** David argues there were values included on the child-support worksheet that "were supposed to come from the Basic Child Support Schedule (JFS 07767) but which do not actually appear anywhere in that document." This argument is without merit.

**{¶22}** R.C. 3119.05(G)(2) gives courts the discretion to make a child-support determination using any of three calculation methods. Specially, the statute provides:

> If the combined annual income of both parents * * * **is an amount that is between two amounts set forth in the first column of the schedule**, **the court** or agency **may** use the basic child support obligation that corresponds to the higher of the two amounts in the first column of the schedule, use the basic child support obligation that corresponds to the lower of the two amounts in the first column of the schedule, or **calculate a basic child support obligation that is between those two amounts and corresponds proportionally to the parents' actual combined annual income or the individual parent's annual income.**

(Emphasis added.) R.C. 3119.05(G)(2).

**{¶23}** Faced with a combined annual income that did not appear on the basic support schedule,[1] the court used the underlying formulas found at R.C. 3119.021 to calculate an amount "that is between those two amounts and corresponds

---

[1] *See, e.g.,* Ohio Dept. Job & Family Svcs., *Basic Support Schedule*, http://www.odjfs.state.oh.us/forms/num/JFS07767/pdf/ (accessed Dec. 17, 2021).

proportionally to the parents' actual combined annual income." R.C. 3119.05(G)(2). The court did not err in its calculation of the guideline support amount.

### The trial court deviated for reasons not sought by Emily

{¶24} David argues the court erred because it deviated for reasons not sought by Emily. R.C. 3119.22 provides that the court may deviate after assessing the factors in R.C. 3119.23 if the court determines that the amount is unjust, inappropriate, and not in the child's best interest. The statute does not require that a party request a deviation before the court can deviate. The discretion lies with the court.

### The trial court did not exceed the scope of the remand order

{¶25} David argues that the court exceeded the scope of the remand order by deviating from the guideline amount for "entirely new reasons," not addressed in the court's first child-support order, because "[c]omputation was the only action this Court ordered." Essentially, he argues that because "equal parenting time" was the only reason given for deviation in *Rummelhoff I*, the court was limited to that reason on remand.

{¶26} The issue in *Rummelhoff I* was that the court did not make a finding that the obligation was unjust and not in the best interest of the children; and did not provide sufficient findings of fact to support the deviation. Upon remand, the court was not limited to giving the same reasons for the deviation. It was required to justify the deviation.

{¶27} In the revised child-support order, the court noted a downward deviation for (1) "the relative financial resources of the parties in that Mr. Rummelhoff has the ability to earn more than he was currently earning;" (2) "significant in-kind contributions from Ms. Rummelhoff including health insurance

10

costs," and (3) a 10 percent deviation for shared parenting, pursuant to R.C. 3119.23 and 3119.231. Like in his sixth assignment of error, David takes issue with the fact that "considering the exact same set of facts, the Magistrate decided initially that equal parenting time * * * was the solitary reason to deviate child support," but on remand it "now only justif[ies] a 10% deviation."

{¶28} In *Rummelhoff I* we directed the trial court on remand to provide the required findings of fact to support the deviation. The court was well within the remand order to include new reasons to support the deviation amount. However, as discussed below, we find that the trial court abused its discretion in deviating for those reasons.

### The propriety of the deviations at issue

{¶29} The rest of David's third assignment of error, and his fourth, fifth, and sixth assignments of error, challenge the grounds for the trial court's deviations.

{¶30} In his third assignment of error, David argues that the trial court has not set forth adequate reasons for why a deviation was in the best interest of the children. He argues it is not enough for the trial court to "merely include the 'magic words' " that the child-support amount is not in the best interest of the children. But the thrust of his argument is that the court's reasons for the deviations were erroneous and an abuse of discretion. As set forth below in our discussion of the fourth and fifth assignments of error, we agree that the court abused its discretion when it granted two of the deviations.

{¶31} In David's fourth assignment of error, he argues the trial court abused its discretion by deviating for the "relative financial resources of the parties" under R.C. 3119.23(E) based on the magistrate's belief that David had the ability to earn

more than he currently was earning. R.C. 3119.23(E) states that "relative financial resources" include "the disparity in income between the parties or households, other assets, and the needs of each parent." R.C. 3119.23(E).

{¶32} While the record demonstrates that David has extensive education and training that would allow him to increase his income, particularly because he will no longer be the primary caretaker, the court already imputed $25,000 of income to David on this basis when it calculated the guideline support amount.

{¶33} A parent's underemployment is accounted for when the court imputes income. The Tenth District has directed trial courts to follow a two-step process in making this determination:

> First, the trial court must determine that the parent is voluntarily unemployed or underemployed. Once the court makes such a finding, the court must then determine the amount of income to impute, based upon the factors in [R.C. 3119.01(C)(17)].

(Citations omitted.) *Habtemariam v. Worku,* 10th Dist. Franklin No. 19AP-47, 2020-Ohio-3044, ¶ 14. These factors include "prior employment," "education," "availability of employment," "prevailing wages," "special skills and training," and "increased earning capacity because of experience." R.C. 3119.01(C)(17) (formerly R.C. 3119.01(C)(11), eff. through Sept. 2021). It is evident that the intent of the legislature was to account for income potential through the imputation of income, rather than to deviate based on a "relative financial resource" as the magistrate seemed to do here.

**{¶34}** Thus, a deviation based on "relative financial resources" does not refer to a party's untapped income potential or underemployment. The deviation must be based on actual financial resources.

**{¶35}** While it is unclear if the magistrate meant to deviate due to the disparity in income between the parties, the trial court seemed to interpret the magistrate's decision in that way. In its entry on the objections, the trial court stated that "[w]hen comparing the parties' relative financial resources, including the income disparity between parties, it is proper to use the imputed amount for a party's income if that party is voluntarily unemployed." We agree with that statement. But if the deviation was based on the disparity in income between the parties, then that deviation would be unreasonable and an abuse of discretion because David's imputed income is less than half of Emily's income and Emily lives in a two-income household.[2] *See, e.g., Hilbert v. Hilbert*, 2016-Ohio-8099, 74 N.E.3d 977, ¶ 31-32 (12th Dist.) (holding that the trial court did not abuse its discretion in refusing to deviate downward because the record showed that father's salary far exceeded mother's and father lived with someone who helped pay expenses, "thus making his financial capacity and ability to pay child support even greater"); *Mayberry v. Mayberry*, 10th Dist. Franklin No. 15AP-160, 2016-Ohio-1031, ¶ 54 ("Mayberry cannot escape the fact that his household income significantly exceeds Duke's household income. Given this fact, we find no abuse of discretion in the trial court's decision not to deviate from the guideline child support amount.").

---

[2] At the September 18, 2018 hearing, Emily testified that in September or October of 2017 she moved in with her partner, Ryan, later buying a house with him. She stated that "[o]ne of the main reasons was financial." We note, however, that benefits received from shared living expenses are specifically included as a deviation factor in R.C. 3119.23(G).

{¶36} It was an abuse of discretion to base a deviation under R.C. 3119.23(E) on David's "ability to earn more than he currently was earning." David's fourth assignment of error is sustained.

{¶37} In his fifth assignment of error, David argues that the court erred by deviating under R.C. 3119.23(I) for "significant in-kind contributions from [Emily] including health insurance costs." R.C. 3119.23(I) allows courts to deviate from the standard obligation for: "[s]ignificant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing." David argues that the legislature intended health-insurance costs to be dealt with elsewhere on the worksheet, and the record does not support any in-kind contributions made by Emily. Emily concedes that the children's insurance premiums are already accounted for in the worksheet, but argues the deviation is nonetheless valid because of her responsibility to pay the first $388.70 per year, per child in uninsured and unreimbursed medical expenses.

{¶38} In its entry on the objections to the magistrate's order, the trial court stated that the deviation was proper because "Line 10 only factors in a fifteen dollar per month reduction in child support for providing health insurance for the children." The court held that "[i]t is not improper for the magistrate to deviate an additional amount based on Plaintiff's payment of health insurance premiums for the children." Thus, despite Emily's contention that the trial court's deviation was referring to uninsured and unreimbursed medical expenses, the trial court made it clear that the deviation was referring to the health-insurance premiums paid for by Emily.

{¶39} Despite the trial court's significant discretion on these matters, we are not persuaded that "health insurance costs," specifically health-insurance premiums, are the type of "in-kind contribution" intended to be accounted for under R.C. 3119.23(I). It is significant that health-insurance costs are not mentioned at all as a deviation factor. Furthermore, line 10 of the child-support worksheet already accounted for the health-insurance premiums paid by Emily. *See, e.g., Haviza v. Haviza*, 2d Dist. Darke No. 2017-CA-1, 2017-Ohio-5615, ¶ 28 (finding no abuse of discretion by the trial court for refusing to deviate downward due to health insurance premiums paid by father because "the child support worksheet accounts for the amount of the health insurance premiums paid by [father].").

{¶40} Because the health-insurance premiums are already accounted for in the worksheet and the trial court did not specify any other costs it was referring to, we find that the court abused its discretion in granting a deviation on this basis. David's fifth assignment of error is sustained.

{¶41} In David's sixth assignment of error, he argues "[t]he trial court erred * * * by deviating child support downward by fifty-eight percent." David does not take issue with the court's 10 percent deviation for "equal parenting time," because he agrees that it is required by statute. R.C. 3119.051 directs trial courts to deviate 10 percent "in addition to any other deviations" for parents with shared-parenting responsibilities of over 90 nights per year.

{¶42} However, David does take issue with the remainder of the deviations ordered by the trial court. Because we sustained David's assignments of error with regard to the other deviations, his sixth assignment of error is sustained in part and overruled in part.

15

### 7th Assignment of Error: Award of Attorney Fees

{¶43} David argues the trial court erred when it awarded $2,288 in attorney fees to Emily under R.C. 3105.73(B). He specifically argues the fees are improper because they were awarded without an evidentiary hearing, and he contends that the separation agreement requires each party to pay his or her own fees. We agree the court erred by not holding an evidentiary hearing, but find the separation agreement does not prohibit the trial court's fee award.

{¶44} A trial court's award of attorney fees is reviewed for an abuse of discretion. *Burroughs v. Burroughs*, 1st Dist. Hamilton Nos. C-990001 and C-990031, 2000 WL 262366 (March 10, 2000); *see Hoover Kacyon, LLC v. Martell*, 2018-Ohio-4928, 125 N.E.3d 265, ¶ 63 (5th Dist.) (reviewing an award of attorney fees under R.C. 3105.73 for an abuse of discretion). Generally, attorney fees can be awarded when authorized by statute or upon "a finding of conduct which amounts to bad faith." *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 597 N.E.2d 153 (1992).

{¶45} Here, the statute provides that that a court may award attorney fees in "any post-decree motion or proceeding that arises out of an action for divorce" "if the court finds the award equitable * * * consider[ing] the parties' income, *the conduct of the parties*, and any other relevant factors the court deems appropriate [not including the parties' assets]." (Emphasis added.) R.C. 3105.73(B). Prior to awarding fees under R.C. 3105.73, a trial court must hold a hearing to determine the reasonableness of the fees. *Hubbard v. Hubbard*, 3d Dist. Defiance No. 4-08-37, 2009-Ohio-2194, ¶ 12. Simply submitting itemized bills, without any evidence that the adverse party has been billed for, or paid, the fees, is insufficient and constitutes an abuse of discretion. *Id.*; *see Bagnola v. Bagnola*, 5th Dist. Stark No.

2004CA00151, 2004-Ohio-7286, ¶ 36 (finding an abuse of discretion where no evidentiary hearing was held to determine amount of fee); *Patterson v. Patterson,* 197 Ohio App.3d 122, 2011-Ohio-5644, 966 N.E.2d 898, ¶ 10-11 (1st Dist.) (holding hearing for attorney fees under R.C. 3105.73(B) was sufficient when party had opportunity to cross-examine the adverse party on the fees requested).

{¶46} In this case, while a hearing was held via Zoom, the parties were not present, and no testimony was taken on the reasonableness of the fees. Rather, itemized bills were submitted without an opportunity for appropriate cross-examination. For these reasons, we find the trial court abused its discretion in awarding fees under R.C. 3105.73(B).

{¶47} We do not, however, find that the separation agreement signed by the parties, and incorporated into the decree of divorce, precluded the court's fee award. Although the agreement provides that "[e]ach party shall be responsible for the payment of that party's own individual attorney fees," the trial court held this provision applied only to fees incurred prior to the decree being entered. We agree. While the separation agreement limits the payment of attorney fees up to the point of the decree being filed, it is not reasonable to assume the separation agreement permanently precludes a court from awarding attorney fees for any postdecree proceedings. This is particularly true where the provision authorizing the award aims to curb frivolous conduct in postdecree proceedings, which the trial court found to be necessary here. *See* R.C. 3105.73(B).

{¶48} Because the trial court awarded attorney fees without an evidentiary hearing to determine their reasonableness, the seventh assignment of error is sustained.

*8th Assignment of Error: Refusing to Assign a New Magistrate*

{¶49} Finally, David argues that the trial court abused its discretion by refusing to assign a new magistrate after, he contends, the magistrate engaged in ex parte communications with Emily's attorney via email. David alleges that the assistant to Emily's attorney sent the magistrate multiple ex parte emails, including a Microsoft Word copy of a shared-parenting plan. He contends that this alleged ex parte communication somehow prejudiced him with regard to the shared-parenting plan.

{¶50} However, David's issues with the shared-parenting plan were already litigated in *Rummelhoff I*, and this court affirmed the trial court's adoption of the shared-parenting plan. *Rummelhoff I*, 1st Dist. Hamilton No. C-190355, 2020-Ohio-2928, at ¶ 21. Presumably understanding that he cannot relitigate issues pertaining to the shared-parenting plan, David requests that because the magistrate engaged in ex parte communications, this court should "order that the trial court disqualify the magistrate from hearing any matter pertaining to this case or either party, and to remand the matter to be heard by a different judge in the Hamilton County Court of Domestic Relations."

{¶51} Pursuant to Civ.R. 53(D)(6), disqualification of a magistrate is within the discretion of the trial court. Thus, we review a trial court's decision on a motion to disqualify a magistrate for an abuse of discretion. *See Lingenfelter v. Lingenfelter*, 2015-Ohio-4002, 43 N.E.3d 46, ¶ 10 (9th Dist.).

{¶52} Ex parte communication with a judge[3] is grounds for the judge's removal "when there is 'proof that the communication * * * addressed substantive

---

[3] A "judge" within the meaning of the Ohio Code of Judicial Conduct includes a magistrate. Application of the Code of Judicial Conduct, Section I.B.

matters in the pending case.' " (Citation omitted.) *In re O'Farrell*, 155 Ohio St.3d 1263, 2017-Ohio-9449, 121 N.E.3d 380, ¶ 4, quoting *In re Disqualification of Calabrese*, 100 Ohio St.3d 1224, 2002-Ohio-7475, 798 N.E.2d 10, ¶ 2.

{¶53} Emily argues, and the trial court agreed, that the emails were administrative and therefore covered by the ex parte communication exception in Jud.Cond.R. 2.9. Jud.Cond.R. 2.9(A)(1) permits judges to communicate ex parte, "[w]hen circumstances require it * * * for scheduling, administrative, or emergency purposes." These communications must not address issues on the merits, and the judge must "reasonably believe[] that no party will gain a procedural, substantive, or tactical advantage." *Id.*

{¶54} Because the emails are not included in the record and David has not demonstrated the emails were anything but administrative, we cannot say that the trial court abused its discretion in refusing to assign a new magistrate. This assignment of error is overruled.

### *Conclusion*

{¶55} For the foregoing reasons, we overrule David's first, second, and eighth assignments of error. However, we sustain his third, fourth, fifth, and seventh assignments of error. We sustain his sixth assignment of error in part and overrule it in part. We remand this cause for the domestic relations court to hold an evidentiary hearing on the amount of attorney fees to be awarded under R.C. 3107.73 and to revise the child-support award consistent with the law and this opinion.

Judgments affirmed in part, reversed in part, and cause remanded.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.