[Cite as *State v. Ware*, 2019-Ohio-2595.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-001- |
| | : | 0625 |
| LEE F. WARE | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of June, 2019.

. . . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, 504 S. Broadway, Greenville, Ohio 45331
     Attorney for Plaintiff-Appellee

MISTY M. CONNORS, Atty. Reg. No. 0075457, P.O. Box 340246, Beavercreek, Ohio
45434
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Lee Ware appeals from a judgment finding him guilty of the crime of falsification, a misdemeanor of the first degree. Ware contends that the State failed to prove beyond a reasonable doubt that his statement to the police was made with the purpose to incriminate. He further contends that the trial court abused its discretion when it denied his motion to continue the trial. Finally, Ware contends that the trial court abused its discretion by denying his counsel's motion to withdraw when the record indicated that a serious breakdown in communication existed.

**{¶ 2}** We conclude that the trial court did not err in finding Wade guilty of falsification. The State proved beyond a reasonable doubt that Ware's false statement about an alleged sexual assault by a jail nurse was made with the purpose to incriminate the nurse. Further, the trial court did not abuse its discretion by denying Ware's motion to continue, made on the day of trial, in order to file a jury demand. Ware waived the right to a jury trial by failing to timely file the demand. Finally, the trial court did not abuse its discretion by denying the motion by Ware's counsel to withdraw, again done the morning of trial. Ware failed to show good cause for appointment of new counsel. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** On September 24, 2018, Detective Sergeant David Hawes of the Darke County Sheriff's Department filed a complaint in the Darke County Municipal Court, alleging that Ware had committed the crime of falsification on September 20, 2018, by making a false statement with purpose to incriminate another in violation of R.C.

2921.13(A)(2).   Ware was ordered to appear for arraignment on September 25, 2018.

{¶ 4} At the arraignment, Ware pled not guilty and asked for counsel to be appointed.   At the time, Ware was in the Darke County Jail for a probation violation.   The same day, the court appointed attorney Matthew Pierron as counsel for Ware.   On September 28, 2018, Pierron filed a waiver of Ware's speedy trial rights and also filed a discovery request under Crim.R. 16.   The State then filed a certificate of compliance and reciprocal request for discovery from Ware on October 4, 2018.

{¶ 5} A pretrial agreement filed on October 17, 2018, contained an offer that if Ware would plead to the crime as charged, the State would recommend a $250 fine, 90 days in jail with 87 days suspended, and probation terms to include no violations of law for two years and that Ware pay the fine and court costs as agreed.   The disposition of the pretrial was that the matter was set for trial, rather than a change of plea.   On the same day, the court set the matter for trial on November 14, 2018.

{¶ 6} On the day of trial, Pierron and Ware appeared for trial as ordered.   Before trial began, Pierron asked the court for permission to withdraw, stating that Ware did not appear to believe Pierron had his best interest at heart.   Pierron further stated that if the court denied the motion to withdraw, he would ask the court for a continuance.   The basis of this request was that Ware had made Pierron aware that day that he wanted a jury trial. Pierron accepted full responsibility for the problem, because he was not able to go see Ware in jail to ask if he wanted a jury trial.   Pierron also informed the court that he was prepared to proceed if the court denied his motions.

{¶ 7} The court denied the withdrawal request, and the State then objected to a continuance, indicating that the case had been scheduled since October 17, 2018, and

the State had witnesses and was ready to proceed. After the court denied the motion for continuance, the State presented testimony from three witnesses. Ware did not present any witnesses. After hearing the testimony, the court found Ware guilty as charged, and imposed a $100 fine and court costs, a 29-day jail sentence to be served at the court's discretion, and conditions of community service. Ware then appealed from his conviction and sentence.

## II.  Proof of the Crime

{¶ 8} Ware's First Assignment of Error states that:

> The State Failed to Prove Beyond a Reasonable Doubt that the Defendant's Statement Was Made With the Purpose to Incriminate.

{¶ 9} Under this assignment of error, Ware contends that the trial court erred by construing the meaning of "incrimination" as a mere utterance of a falsehood. According to Ware, his statement was not made for the purpose of incriminating anyone, but was made only for the purpose of convincing the jailors to provide him with the number for a rape hotline so he could discuss a private matter.

{¶ 10} As noted, Ware was charged with falsification in violation of R.C. 2921.13(A)(2). This statute provides, in pertinent part, that:

> (A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:
>
> * * *
>
> (2) The statement is made with purpose to incriminate another.

{¶ 11} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 12} The alleged false statement involved a paramedic who worked at the jail. Allegedly, she stuck her finger in Ware's anus while doing a medical examination. According to the testimony, Ware asked to see the jail paramedic (also called a nurse) on July 26, 2018, because he had hemorrhoids and wanted a blanket to sit on. In order for the nurse to give an inmate a blanket, she had to verify that a hemorrhoid existed. The nurse worked part-time at the Darke County Jail and full-time at the Miami County Jail and had been trained in all appropriate procedures by a nurse practitioner.

{¶ 13} Two corrections officers, Adam Cothran and Rachel Class, escorted Ware to the infirmary. The nurse, Sue, asked Class to leave because she was a female; in situations where exams are done on female inmates, the male officer will be asked to step out of the room. Sue also wanted a male officer present for protection. Specifically, if Sue were going to look at a male's private parts, she wanted a male officer there to prevent false allegations.

{¶ 14} In this type of situation, standard procedure is to have the inmate pull his or her pants down. The butt cheek will then be pulled apart and the nurse will look at the inmate's butt. Sue was not sure if she asked Ware to pull his own cheek apart or whether she did it herself, but she believed she likely did it herself. Sue explained that in this process, the examiner does not have to touch the rectum, but is only touching the area around it because the butt cheeks have to be spread apart. She denied digitally

penetrating Ware's anus. After looking, Sue told Ware he could not have a blanket because he did not have severe hemorrhoids. Sue did not recall if Ware was upset, but said if he had been, she would have noted it.

{¶ 15} As noted, Cothran remained in the room during the exam. He stood no more than five feet away and had an unobstructed view. Cothran did not recall Sue even touching Ware and thought that she had told Ware to spread his own cheeks. He stated that if Ware had said he was digitally penetrated during the exam, he was lying and made a false statement. Cothran stressed that if Ware had been digitally penetrated, he would have seen it.

{¶ 16} After the exam was finished, Cothran and Class took Ware back to his cell. In an attempt to lighten the scene, Cothran made a joke to Ware about the fact that he had seen a part of him that he had never wanted to see. Ware did not make any complaint when he was being taken back to his cell, nor did he say that anything inappropriate had occurred.

{¶ 17} Nearly two months later, on September 20, 2018, Ware asked correctional officers at the jail for a phone number for a rape hotline for people who are incarcerated. An officer asked Ware what was going on, since if Ware had been victimized at the jail, the officers needed to know because they were there to keep him safe.

{¶ 18} On September 21, 2018, Detective Hawkes received information from the jail that Ware had alleged that he had been sexually assaulted while incarcerated in the jail. Hawkes was responsible for investigating serious crimes in Darke County. Hawkes then contacted the corrections officers who received the information from Ware and obtained statements from them. He then interviewed Ware, who alleged that the jail

nurse, Sue, had digitally penetrated his anus with her finger while performing an exam for hemorrhoids. Ware also said that a corrections officer, Cothran, was present. In addition, Ware said that, after the exam, he had a conversation with Cothran as they were walking back to Ware's cell. Ware claimed he told Cothran that he felt violated by what the nurse had done to him.

{¶ 19} After speaking with Ware, Hawkes spoke to Sue, who denied doing anything like what Ware had alleged. He also obtained a written statement from Cothran that was consistent with his trial testimony. Cothran also denied that Ware had made any comment about being violated. At the end of his investigation (and having done some additional follow up), Hawkes concluded that Ware was not being honest and had lied about what took place. As a result, Hawkes filed the falsification charge against Ware.

{¶ 20} As noted, Ware did not offer any evidence at trial. When the testimony concluded, defense counsel argued that all Ware had asked was to use the hotline; he did not ask for an investigation or to speak to Detective Hawkes. Counsel, therefore, argued that Ware did not knowingly make a false statement. The trial court disagreed, noting that if Ware had called the hotline, he would have made the same statement. Transcript of Proceedings ("Tr."), p. 37. The court then found Ware guilty based on the evidence and the credibility of the witnesses. *Id.* at p. 38.

{¶ 21} After reviewing the record, we agree with the trial court. The argument that Ware only wanted to call a sexual assault hotline rather than talking to the correction officers or to Detective Hawkes is irrelevant. If Ware had reported the alleged crime to the hotline, he would, under the evidence, still have knowingly made a false statement to

incriminate the jail nurse. R.C. 2921.13(A)(2) does not require that the false statement be made to the police or to any particular person or entity; it simply requires that the false statement be made for the purpose of incriminating another.

{¶ 22} Accordingly, we find no merit in Ware's position. Furthermore, the evidence is overwhelming that Ware made the false statement in order to incriminate the jail nurse. The First Assignment of Error, therefore, is overruled.

### III. Denial of Continuance

{¶ 23} Ware's Second Assignment of Error states that:

The Trial Court Abused Its Discretion When It Denied Defendant's Motion to Continue to Allow His Attorney Time to File a Written Jury Demand.

{¶ 24} Under this assignment of error, Ware contends that the trial court abused its discretion when it denied his motion to continue the trial so that he could preserve his right to a jury trial. Ware notes that the delay would have been minimal, that his right to a jury trial was inviolate, that no other continuances had been requested, and that the State would not have been prejudiced.

{¶ 25} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons

presented to the trial judge at the time the request is denied.' " *Id.*, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

**{¶ 26}** "An abuse of discretion has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.*

**{¶ 27}** Under the balancing test adopted by the Supreme Court of Ohio, a trial court should exercise its discretion by evaluating "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Unger* at 67-68.

**{¶ 28}** Ohio Crim.R. 23(A) provides that:

In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. *Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.*

(Emphasis added.)

**{¶ 29}** The Supreme Court of Ohio has said that:

The guarantee of a jury trial in criminal cases contained in the state and federal Constitutions is not an absolute and unrestricted right in Ohio with respect to misdemeanors, and a statute, ordinance or authorized rule of court may validly condition the right of a jury trial in such a case on a written demand therefor filed with the court a specified number of days before the date actually set for the trial for the offense charged.

*City of Mentor v. Giordano*, 9 Ohio St.2d 140, 224 N.E.2d 343 (1967), paragraph one of the syllabus.

{¶ 30} In the case before us, the complaint against Ware was filed on September 24, 2018, and Ware was arraigned on September 25, 2018. Counsel was appointed the same day and very quickly filed both a waiver of speedy trial rights and a request for discovery, which the State answered by October 4, 2018. From the record, Ware appears to have rejected a plea offer at the October 17, 2018 pretrial, and trial was set for November 14, 2018. Thus, the trial was scheduled for nearly a month after the pretrial, and Ware and his counsel had ample notice. At the last minute, i.e., on the day of trial, Ware's counsel asked for a continuance so that a request for jury trial could be filed. Counsel took responsibility for the fact that he had not been able to see Ware in the jail to ask if he wanted a jury trial. However, at that point, the State had prepared for trial and had witnesses waiting. Ware's counsel also stated that he was prepared to go to trial if the court overruled his motion to continue.

{¶ 31} Under the circumstances, we find no abuse of discretion. Crim.R. 23(A) states specifically that if a jury demand is not timely filed, it is a "complete waiver" of the right. Furthermore, even if we assumed that trial counsel was ineffective in failing to

ascertain whether Ware wanted a jury trial (an issue that has not been raised), the test is whether "prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989), paragraph two of the syllabus. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 32} As was noted, the evidence against Ware was overwhelming, and there is no reasonable probability that the result would have been different absent counsel's error.

{¶ 33} Accordingly, the Second Assignment of Error is overruled.

IV.   Denial of Motion to Withdraw

{¶ 34} Ware's Third Assignment of Error states as follows:

The Trial Court Abused Its Discretion When It Denied Counsel's Motion to Withdraw Because the Record Demonstrates a Significant Breakdown in Communication Between Attorney and Client.

{¶ 35} Under this assignment of error, Ware contends that the trial court should have permitted the motion of counsel to withdraw because there was a complete breakdown of communication with his attorney. As evidence, Ware points to counsel's admission that he had never spoken to Ware until the day of trial.

{¶ 36} We have noted that "[a] criminal defendant's Sixth Amendment right to competent counsel does not extend to a right to counsel of the defendant's choice. * * * Nor does the right to counsel include a right to a meaningful or peaceful relationship

between counsel and the defendant." (Citations omitted.) *State v. McCoy*, 2d Dist. Greene No. 2003-CA-27, 2004-Ohio-266, ¶ 7. Despite these facts, "a criminal defendant may discharge a court-appointed attorney when the defendant can demonstrate a breakdown in the attorney-client relationship to such a degree as to endanger the defendant's right to effective assistance of counsel." *Id.* at ¶ 8, citing *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1998), paragraph four of the syllabus.

{¶ 37} In *McCoy*, we described this breakdown as "a conflict of interest where the conflict is so severe that the denial of substitute counsel would violate the Sixth Amendment right to counsel." *Id.*, citing *State v. Blankenship*, 102 Ohio App.3d 534, 543, 657 N.E.2d 559 (12th Dist.1995). "Alternatively, the defendant may demonstrate a complete breakdown of communication or an irreconcilable conflict which leads to an unjust result." *Id.* The defendant has the burden of showing such good cause for the appointment of new counsel. *Id.* We review trial court decisions on motions to withdraw for abuse of discretion. Again, that is "an attitude that is unreasonable, arbitrary or unconscionable," but most commonly is based on unsound reasoning. *AAAA Ents., Inc.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 38} In the case before us, trial counsel only commented that Ware did not feel counsel had his best interest at heart. No further explanation was given. This is not sufficient to show the level of breakdown required. Furthermore, Ware's comment about counsel's "admission" is incorrect. Counsel did not say that he had never spoken to Ware before the day of trial. Counsel only said that he "was not able to go see him in the jail *to ask him if he wants a jury trial*." Tr. at p. 5. This statement is ambiguous. It could mean only that counsel had not been able to see Ware to ask that specific question.

It also does not mean that counsel never spoke to Ware; they obviously could have spoken by telephone or could have exchanged correspondence.

{¶ 39} In addition, counsel stated that he was prepared to proceed, and did participate fully in the trial, asking appropriate questions during cross-examination. As noted earlier, counsel did obtain complete discovery from the State. And frankly, there was little to investigate and little information that was needed from Ware. Ware's story, essentially, was that he was assaulted in the manner described, and that he asked for the rape hotline number from the police. The only conflicts in the testimony were: (1) did the nurse digitally penetrate Ware's anus, as he claimed; and (2) did Ware complain at the time to Cothran about being violated. This was not a complicated case.

{¶ 40} Based on the preceding discussion, Ware has failed to show good cause for appointment of new counsel, and we find no abuse of discretion on the trial court's part. The Third Assignment of Error, therefore, is without merit and is overruled.

V. Conclusion

{¶ 41} All of Ware's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Jesse J. Green
Misty M. Connors
Hon. Julie L. Monnin