[Cite as *State v. Hall*, 2021-Ohio-3017.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200264 |
| | | TRIAL NO. 20CRB-9624 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| CHRISTOPHER HALL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 1, 2021

*Andrew W. Garth,* City Solicitor, *William T. Horsley*, City Prosecutor, and *Amber H. Daniel*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Christopher Hall appeals his conviction for domestic violence. For the reasons that follow, we reverse the trial court's judgment and remand the cause for a new trial.

### *Facts and Procedure*

{¶2} On May 25, 2020, Cincinnati Police Officer Brandon Contris responded to a domestic-violence call from Hall's then-girlfriend, Tammie Smith. When Contris arrived on the scene, he found Smith with "red lines on her neck and markings on her head." At trial, the parties presented two largely conflicting versions of events.

{¶3} Smith testified that Hall "snapped" after she refused to buy him marijuana. According to Smith, "we were standing outside, and he asked me to buy him a $10 bag of weed. And the next thing you know, he slammed me to the ground and started choking me and pulling my hair and threw my purse." Smith stated, "I was [in pain]" and "I couldn't breathe." She later noticed "marks" on her face and neck, as well as bruising on her right elbow.

{¶4} Hall testified in his own defense and claimed that he acted in self-defense. Hall testified that Smith reacted violently after he made a disdainful comment. According to Hall, "[Smith] started cursing at me like in front of everybody like telling me that I'm her bitch. I am her slave. * * * [A]nd then she like – she get all up on me, and she put her hand in my face, pushed me." Hall testified, "I pushed her away. And then she fell." Hall stated that he pushed Smith on her chest and he denied ever choking her. Hall then continued, "And when she got up, * * * she goes to her purse and grabs a sharp object and tries to like stab me with it." According to Hall, "I started to block her and then I walked away." Hall testified that he walked down the street, took a "20-

minute breather," and then called Smith and asked if "it was okay for me to come back to the house." When Smith said "yes," Hall returned to the apartment.

{¶5} Hall was arrested later that morning and charged with one count of domestic violence, in violation of R.C. 2919.25(A). On May 29, 2020, Hall filed a demand for discovery and a demand to preserve recordings. The state never filed a discovery response. On July 16, 2020, the matter proceeded to a bench trial. Before opening arguments, defense counsel made an oral motion in limine. Counsel argued that he asked for discovery in May, received no response, and yet, was provided photographs of Smith's injuries on the morning of trial. Accordingly, counsel asked for the photographs to be excluded from use at trial. The court denied counsel's motion to exclude the photographs and instead offered him a continuance. Counsel refused and proceeded to trial. After one morning of testimony, Hall was found guilty and sentenced to 45 days in jail.

### Law and Analysis

{¶6} On appeal, Hall raises two assignments of error. First, Hall contends that his conviction for domestic violence was against the manifest weight of the evidence. Second, Hall argues that the trial court erred in ruling on several discovery violations committed by the state. We begin with the second assignment of error because we find it dispositive of this appeal.

{¶7} In his second assignment of error, Hall argues that the trial court erred when it failed to exclude photographs of the victim's injuries disclosed by the prosecution on the morning of trial.[1]

---

[1] Hall also argues that the trial court erred in failing to impose sanctions for two additional discovery violations: (1) the state's failure to disclose video footage from Officer Contris's body-worn camera, and (2) the state's alleged failure to disclose video footage from the apartment surveillance cameras—the existence of which was in question at trial. Because we find Hall's argument regarding the photographs dispositive, we address only that issue.

{¶8} Crim.R. 16 governs discovery in a criminal case. Crim.R. 16(B)(3) provides that upon written demand for discovery by the defendant, the prosecuting attorney must provide copies of photographs which are intended for use as evidence at trial.

{¶9} Crim.R. 16 is meant "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the judicial system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). "The overall objective of the criminal rules is to remove the element of gamesmanship from a trial. The purpose of the discovery rule is to prevent surprise and the secreting of evidence favorable to one party." (Internal citations omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19.

{¶10} When a party commits a discovery violation, the trial court may impose any sanction "it deems just under the circumstances." Crim.R. 16(L)(1). For example, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed[.]" *Id.*

{¶11} However, a court may impose sanctions "only after inquiring into the circumstances surrounding the violation." *State v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517, ¶ 42 (1st Dist.), citing *Darmond* at ¶ 35. When determining the appropriate sanction, a trial court must consider "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Darmond* at ¶ 35.

{¶12} In this case, the trial court failed to make any inquiry into the circumstances of the discovery violation. Prior to trial, defense counsel made an oral motion in limine to exclude the photographs of Smith's injuries. Counsel posited that he asked for discovery in May, received no response, and yet, was provided the photographs the morning of trial. Accordingly, counsel asked the trial court to prohibit the state from introducing into evidence the undisclosed photographs. The court asked the prosecution, "Any response from getting pictures to him today?" The state responded, "Your Honor, we ask to, by the least restrictive means, we be permitted to use them today or defense counsel to be given a continuance." The court made no further inquiry into the circumstances of the discovery violation. The trial court subsequently ruled, "With the defendant being locked up, I am going to allow the pictures to be used. I have offered [defense counsel] the option of this being continued. I understand because his client is locked up, he would prefer not to do that."[2]

{¶13} Due to the trial court's failure to inquire into the circumstances of the violation, it was impossible to determine an appropriate sanction. First, the record does not provide any justification or excuse for the state's failure to comply with the discovery request. Officer Contris testified that he photographed Smith's injuries on the night of the alleged assault. According to Contris, "I had [Smith] fill out a statement and took pictures. * * * And then I went down to the clerk's office to file a domestic violence form." Thus, the state should have known about the photographs well in advance of trial. In the exercise of due diligence, the state should have asked Contris if he took any photographs of the alleged victim's injuries when it received Hall's discovery demand. Because the court did not inquire into the circumstances of the discovery violation, we

---

[2] We note that at the time of trial, Hall was serving a 180-day sentence on a prior conviction for violating a civil protection order. Hall received an own-recognizance bond for the domestic-violence charge.

5

are unable to determine whether the state acted willfully or negligently in failing to disclose the photographs.

{¶14} Next, the record was not fully developed as to whether foreknowledge of the photographs would have benefitted Hall in preparing his defense. Throughout the proceedings, Hall maintained that he pushed Smith in self-defense. Earlier knowledge of the photographs probably would not have changed his theory of defense. However, if the photographs had been turned over in a timely manner, defense counsel would have had time to examine the nature of the injuries, adequately prepare to cross-examine Smith, and perhaps, find an alternate cause for the marks and bruises.

{¶15} Finally, the record demonstrates that the photographs had a significant impact on Hall's case. The case amounted to little more than "he said, she said." However, the photographs gave great credence to Smith's testimony. In fact, the photographs were the lynchpin of the state's case. In rebuttal, the state argued:

> Defense counsel says it is a drunken shove and should be disorderly conduct, but the pictures show, particularly A and B, appear to show fingermarks on the neck of the victim and the defendant himself says he didn't notice any marks before this happened. Your honor, I think that it is clear here what was happening was the defendant was angry and being embarrassed and I think he wanted to go against that, lash out. That is what he did and that's what the pictures show.

The court also relied on the photographs when sentencing Hall. Specifically, the court stated, "There were three Exhibits that I looked at, those being pictures indicating bruises on the face and neck, and then bruises to the elbow." Without a proper opportunity to challenge the photographs, Hall was severely hampered in his defense.

6

{¶16} A review of the record demonstrates that the trial court did not consider any of these factors, and instead, simply offered defense counsel a continuance. It is true that a trial court has broad discretion in determining sanctions for a discovery violation. *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at ¶ 33. However, a trial court abuses that discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *Id.* at ¶ 34. "[A]n abuse of discretion includes the failure to engage in 'a sound reasoning process.' " *State v. Morales*, 1st Dist. Hamilton No. C-120670, 2014-Ohio-362, ¶ 62, quoting *Darmond* at ¶ 34. Because it imposed a sanction without engaging in the sound reasoning process provided by *Darmond*, we find that the trial court abused its discretion. *See State v. Williams*, 1st Dist. Hamilton No. C-160196, 2016-Ohio-8123, ¶ 12 ("In this case, the record does not demonstrate that the court considered the proper factors before imposing the harshest sanction possible, dismissal of the charges. On that basis alone, we hold that the trial court abused its discretion in dismissing the charges against Williams."); *State v. Branam*, 1st Dist. Hamilton No. C-190349, 2020-Ohio-3101, ¶ 10 (same).

{¶17} Based on the foregoing analysis, we sustain Hall's second assignment of error. Because our determination of Hall's second assignment of error necessitates reversal of the trial court's judgment and a remand of the cause to the trial court, we find Hall's first assignment of error moot and decline to address it.

### Conclusion

{¶18} Hall's second assignment of error is sustained, and his first assignment of error is rendered moot by our disposition of the second assignment of error. Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

