[Cite as *State v. Austin*, 2021-Ohio-3608.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210140 |
| | | C-210141 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-20CRB-16036 |
| | | C-20CRB-20043A |
| | : | |
| vs. | | |
| | : | *O P I N I O N.* |
| DESMOND AUSTIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 8, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Lewis Law Firm* and *Cornelius Lewis,* for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} After spending the night with one woman, defendant-appellant Desmond Austin returned the next day to the home he shared with a different woman. Perhaps not surprisingly, tempers flared and a fight ensued. The altercation ended with the victim seeking medical treatment and Mr. Austin convicted of domestic violence and aggravated menacing. On appeal, Mr. Austin presents three assignments of error, claiming prejudicial error and challenging the weight and sufficiency of the evidence. We overrule all three and affirm the trial court's judgment.

I.

{¶2} Having met out west and traveled together for a number of years, Mr. Austin and Ryshema Bailey settled down in Hamilton County. One evening, Mr. Austin left around 10:00 p.m. and never returned. Ms. Bailey, suspicious that Mr. Austin departed for a rendezvous with his former girlfriend and the mother of his children, attempted to reach him by phone and text, but to no avail. Instead, he sauntered home to Ms. Bailey around 7:15 a.m. the next morning only to find the house in disarray with damage inflicted on some of his personal property. A verbal dispute erupted between the couple, with conflicting accounts as to whether or what extent physical violence occurred.

{¶3} According to Mr. Austin, he arrived home to a very agitated Ms. Bailey. Mr. Austin decided to go for a jog in order to allow Ms. Bailey time to simmer down. He went to the basement and changed into running clothes. Upon returning upstairs, he noticed that Ms. Bailey had left the house. Mr. Austin claimed no physical violence occurred during this time. Ms. Bailey's version of the story differs

significantly. In her rendition, Mr. Austin threatened her by patting his right hip—the place he normally carried a Glock pistol—warning Ms. Bailey that he could "kill [her] today." When Ms. Bailey attempted to call 911, Mr. Austin grabbed the phone from her. He then put her in a choke hold, pressed the pistol against her right cheek, and shoved her to the floor. At this point, Ms. Bailey escaped, running across the street to Bethesda North Hospital. Upon hearing her account of these events, hospital staff contacted the Montgomery Police Department.

{¶4} After a bench trial, the court convicted Mr. Austin of domestic violence and aggravated menacing and imposed concurrent 180-day jail sentences on each charge. Mr. Austin presents three assignments of error. First, he faults the trial court for denying his request for a continuance of the trial. Next, he claims that the state failed to marshal sufficient evidence to convict him of aggravated menacing because the state did not prove an element of the charge. And finally, Mr. Austin maintains that the convictions for both domestic violence and aggravated menacing are against the manifest weight of the evidence.

II.

{¶5} In his first assignment of error, Mr. Austin insists that the court erred twice by denying him a continuance. Mr. Austin requested an initial continuance in order to file a jury demand (after previously waiving his right to a jury). Shortly thereafter, he requested another continuance when the prosecution divulged incriminating photographs the morning of trial. Both requests were denied. Because the "trial court is in the best position to rule on a requested continuance after considering all the surrounding circumstances," we "must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Martin*, 1st Dist.

3

Hamilton No. C-050584, 2006-Ohio-5263, ¶ 24. Abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* Slip Opinion No. 2021-Ohio-3304, ¶ 35. And, as the Supreme Court recently clarified, "courts lack the discretion to make errors of law." *Id.* at ¶ 39.

A.

{¶6} We first consider Mr. Austin's request for more time in order to submit a jury demand. He concedes that he waived his right to a jury trial for this petty offense by not presenting a jury demand in writing not less than ten days before trial. Crim.R. 23(A) ("Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."). Yet Mr. Austin goes on to posit that because the state did not oppose his continuance request, the court abused its discretion by following Crim.R. 23 and denying the request. When considering whether to grant a continuance, trial courts should consider "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger,* 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981); *see State v. Blassingame,* 1st Dist. Hamilton No. C-190555, 2021-Ohio-426, ¶ 17. Mr. Austin concludes that on the whole, the *Unger* factors point in his favor. We disagree.

{¶7} To begin, we're not convinced that the state actually acquiesced in the continuance request, as it seemed to oppose the request on grounds of inconvenience

4

to witnesses. Mr. Austin requested the continuance mere minutes before the start of trial. By then, the state had assembled the prosecuting witness, two police officers, and a victim's advocate from Women Helping Women in court and ready to testify. When asked about the possibility of a continuance, the state expressed its desire to proceed because "the gang's all here." It was within the court's discretion to find significant inconvenience to the witnesses already present, in light of the last-minute nature of the request and the prior waiver.

{¶8} Next, Mr. Austin directly contributed to the reason for the request. In denying the continuance, the trial court noted some eight months elapsed between the charges at hand and the requested continuance. Ample time and opportunity existed during that window to request a jury trial in accordance with the criminal rules. The court held multiple hearings regarding various issues with counsel ably representing Mr. Austin each step of the way. And when presenting the request for a continuance, Mr. Austin's counsel assumed full responsibility for not submitting the request for a jury demand on time. On this record, Mr. Austin certainly contributed to the requested delay.

{¶9} Turning to whether a good faith basis existed for the continuance, Mr. Austin extols the significance of the right to a jury trial and insists that it should not be displaced by a technicality. But these are not mere technicalities—part of the reason for the requirement to submit a jury demand in a timely manner is to alert the court whether it must assemble a jury or proceed with a bench trial. The guarantee of a jury trial in criminal cases is not absolute with respect to misdemeanors in Ohio, and an authorized rule of the court may validly condition the right. *State v. Ware*, 2d Dist. Darke No. 2018-CA-8, 2019-Ohio-2595, ¶ 29, citing *City of Mentor v.*

*Giordano*, 9 Ohio St.2d 140, 224 N.E.2d 343 (1967), paragraph one of the syllabus ("The guarantee of a jury trial in criminal cases * * * is not an absolute and unrestricted right in Ohio with respect to misdemeanors, and a statute, ordinance, or authorized rule of court may validly condition the right of a jury trial[.]").  Criminal Rule 23 is just such a rule, providing that in petty offense cases, a defendant will be tried by the court unless he demands a jury trial "not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later."  Mr. Austin failed to meet this condition and the court did not abuse its discretion when denying him a continuance to submit a tardy demand in light of the totality of circumstances.

B.

**{¶10}**  We next consider the trial court's second, and more troublesome, refusal to continue the case in response to a discovery violation.  Minutes before opening statements, the prosecutor disclosed to defense counsel photographs showing injuries to the victim's arm and face that the state intended to present as evidence.  The photographs contained no date, timestamp, or other authenticating notation.   Mr. Austin objected to their authenticity, requesting a one-day continuance to verify authenticity and gather contrary evidence if necessary for his defense.  The request was effectively denied, as the court saw no reason to continue the case when presumably the state would authenticate the photos during its case-in-chief.

**{¶11}**  Undoubtedly, the state breached its duty under Crim.R. 16 by not including the photographs in its discovery response to Mr. Austin.  Crim.R. 16(B)(3) ("Upon receipt of a written demand for discovery by the defendant * * * the

prosecuting attorney shall provide * * * all laboratory or hospital reports, books, papers, documents, [and] photographs[.]"). And when discovery violations occur, a trial court has broad discretion to "impose any sanction 'it deems just under the circumstances.' " *State v. Hall,* 1st Dist. Hamilton No. C-200264, 2021-Ohio-3017, ¶ 10, quoting Crim.R. 16(L)(1). Ohio courts use a three-part test to help guide a trial court in exercising its discretion to impose sanctions. When inquiring into the circumstances of the violation, courts should consider: (1) whether the prosecution's failure to disclose was a willful violation of Criminal Rule 16, (2) whether foreknowledge of the evidence would have benefitted the accused in preparation of his defense, and (3) whether the accused was prejudiced by the evidence concerned. *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 35. If we find the trial court failed to properly cure a discovery violation, we then "consider whether any resulting error was harmless." *State v. Newell,* 8th Dist. Cuyahoga No. 106584, 2019-Ohio-976, ¶ 42, citing *City of Middlesburg Hts. v. Lasker,* 2016-Ohio-5522, 76 N.E.3d 372, ¶ 16 (8th Dist.).

{¶12} Here, the trial court's lack of inquiry into the discovery violation raises concern. Regarding the first *Darmond* factor, the court did not ascertain whether the failure to disclose represented a willful violation. The prosecutor professed that he received the photos that morning due to a "hiccup in the chain," despite admitting police had them and "[i]t's possible they sent them" over previously. The court later points to all the other documents the state turned over in its discovery response, but neglected to investigate the omission of potentially incriminating photographs. Nor did the state explain the alleged oversight, offering nothing more than an assurance that "the First District * * * [is] pretty permissive as long as it's disclosed before

7

trial." But because "the record does not provide any justification or excuse for the state's failure to comply with the discovery request * * * we are unable to determine whether the state acted willfully or negligently in failing to disclose the photographs." *See Hall* at ¶ 13. We also reiterate that Crim.R. 16(B)(3) means what it says, and that it does not allow the state to avoid its responsibilities by simply shrugging its shoulders and laying blame at the feet of the bureaucracy.

{¶13} Likewise, the trial court did not consider the second *Darmond* factor—which explores whether foreknowledge of the photos would have benefitted Mr. Austin's defense preparation—and proceeded right to the third factor, asking what prejudice might result. Mr. Austin responded to the prejudice inquiry by indicating that he had no idea when the photos were taken, how they were taken, or whether they were even taken on the date the incident occurred. He implied that around the time the photos were supposedly taken Ms. Bailey contacted mutual friends who may be able to corroborate (or dispute) when Ms. Bailey sustained the injuries, and suggested the photos could be of injuries from another time and place. The trial court largely discounted these concerns and commenced the trial. On this record, because we cannot say this exchange represented the "sound reasoning process" envisioned by *Darmond*, we find the trial court abused its discretion by failing to consider the proper factors before denying the request for a continuance. *See Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at ¶ 34; *see also Hall* at ¶ 16 ("Because it imposed a sanction without engaging in the sound reasoning process provided by *Darmond*, we find that the trial court abused its discretion.").

{¶14} Having concluded the trial court abused its discretion, we must consider whether it resulted in reversible error. We will not reverse unless (1) "the

8

defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict"; (2) "the error was not harmless beyond a reasonable doubt"; and (3) "once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt." *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25−33. Recently, in *Hall,* we found reversible error when the trial court failed to inquire into the circumstances of a similar discovery violation. *Hall*, 1st Dist. Hamilton No. C-200264, 2021-Ohio-3017, at ¶ 16. There, the state never filed a response to Mr. Hall's discovery request but instead disclosed photos of the victim's injuries the morning of trial. *Id.* at ¶ 5. The case was little more than "he said, she said" with the pictures constituting "the lynchpin of the state's case." *Id.* at ¶ 15. The court also explicitly relied on the photos during sentencing. *Id.* Mr. Hall's attorney requested the photos be excluded; the trial court offered a continuance but defense counsel declined based on Mr. Hall's incarceration. *Id.* at ¶ 12. Because the trial court proposed a sanction without first considering the *Darmond* factors, we reversed and remanded for a new trial. *Id.* at ¶ 16-17.

{¶15} Here, while the trial court failed to properly weigh the *Darmond* factors before denying the continuance, the record demonstrates the error was harmless. Unlike in *Hall*, the photos played no significant role either during trial or at sentencing. The state turned over all other requested discovery approximately four months before trial. The discovery response included an incident report, an arrest and investigation report, a weapons report, Ms. Bailey's statement that she was injured, and a witness list. At least two corroborating witnesses—a nurse from

Bethesda Hospital and the police officer who took the pictures—testified at trial, verifying the nature of the injuries sustained. In light of that testimony, it minimized the significance of the photos, which may explain why they received so little attention during trial. Because we are confident that the trial court's error had no impact on the verdict, we overrule Mr. Austin's first assignment of error in its entirety.

III.

{¶16} In his second assignment of error, Mr. Austin argues insufficient evidence existed to convict him of aggravated menacing because the state failed to prove a necessary element of the offense. Specifically, Mr. Austin claims that Ms. Bailey presented no testimony indicating that she truly feared that he would harm her. With respect to sufficiency, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And " '[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder.' " (Emphasis deleted.) *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279. Whether Mr. Austin's aggravated menacing conviction is supported by sufficient evidence "is a question of law this court reviews de novo." *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.).

{¶17} Mr. Austin centers his sufficiency argument on the element in the statute requiring Ms. Bailey to have believed she faced danger. A person is guilty of aggravated menacing in Ohio when they "knowingly cause another to believe" they are at risk of serious physical harm. R.C. 2903.21(A). Essentially, Mr. Austin argues that because Ms. Bailey never uttered the word "fear" while testifying, then no fear existed on her part. But circumstantial evidence may be used to prove one's belief of serious physical harm. *State v. Flannery*, 1st Dist. Hamilton No. C-140426, 2015-Ohio-1360, ¶ 17 ("Circumstantial evidence also established [the victim's] belief" that the defendant would cause physical harm.), citing *State v. Heinze*, 12th Dist. Brown No. CA99-04-008, 1999 WL 988792 (Nov. 1, 1999). Thus, the question is whether Ms. Bailey presented sufficient testimony that she feared for her safety despite not expressly saying so. The answer is surely yes. Ms. Bailey testified to a number of things which would instill fear in most people. Among these were allegations that Mr. Austin threatened to kill her while referencing his gun, that he later rubbed the gun against her face while conveying other threats, that she was screaming, that she attempted to call 911, that she was hysterical and having a panic attack, and that she ran away from him and to the hospital. Construed in a light most favorable to the state, that certainly paints a portrait of fear sufficient to convince the trial court that Ms. Bailey feared Mr. Austin would cause her serious physical harm. We accordingly overrule this second assignment of error.

IV.

{¶18} In his final assignment of error, Mr. Austin asserts that his convictions for aggravated menacing and domestic violence were both against the manifest weight of the evidence. In reviewing whether Mr. Austin's convictions run counter to

11

the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, the entire record. *Id.* But we will only reverse if the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶19} Here, Mr. Austin speculates that Ms. Bailey fabricated the physical conflict and her injuries in order to punish him for spending the previous night in the arms of another woman. While such a theory is possible, Mr. Austin fails to explain how the court lost its way in rejecting this interpretation of the record. Convictions do not run afoul of the manifest weight of the evidence simply because the trier of fact believed the state's version. *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29 (" 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' "), quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶20} In any event, the trial court did more than just find one side slightly more credible. It pointedly declared Mr. Austin to be the teller of tall tales, not Ms. Bailey. Mr. Austin lied to police about removing weapons from the home after the incident in question. He failed to present corroborating evidence despite admitting such evidence would exist were he telling the truth. The record reflects the court's determination that Mr. Austin "demonstrate[d] his consciousness of guilt" by telling a web of lies. In contrast, the court found Ms. Bailey's testimony to be credible and

consistent. The "credibility of witnesses [is] for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. And because the trier of fact here clearly explained its reasoning on credibility issues and we find those conclusions supported by the record, we overrule Mr. Austin's third assignment of error.

\* \* \*

{¶21} In light of the foregoing analysis, we overrule all of Mr. Austin's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion