[Cite as *State v. Gardner*, 2026-Ohio-2009.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250629 |
| | | TRIAL NO. C/25/CRB/14310 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| ALISA GARDNER, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/29/2026 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Gardner*, 2026-Ohio-2009.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250629 |
| | | TRIAL NO. C/25/CRB/14310 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| ALISA GARDNER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 29, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Verjine V. Andanalian*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**NESTOR, Judge.**

{¶1}    Alisa Gardner was in a relationship with David Watkins. After their relationship ended, Watkins began seeing Terri Hammond. From that point on, Gardner sent Hammond harassing messages. After years, Hammond filed for an ex parte civil stalking protection order. A magistrate issued the requested order. Days later, Hammond received messages from a fake Facebook account that she knew to be Gardner's. Hammond alerted the police and the State charged Gardner. After a bench trial, the court found Gardner guilty of violating the protection order. Gardner appealed.

{¶2}    We hold that any evidentiary errors at the trial were harmless and that Gardner's conviction was consistent with the manifest weight of the evidence. We affirm the trial court's judgment.

### I.  Factual and Procedural History

{¶3}    Hammond filed for a protection order against Gardner in August of 2025. The trial court issued the order on August 11, 2025. Gardner received notice of the protection order on August 12, 2025. On August 15, 2025, Hammond alerted police that Gardner had contacted her on Facebook after the court order had been issued. Gardner was charged with two counts of violating the protection order. The matter proceeded to a bench trial.

{¶4}    First to testify was a deputy in the Hamilton County Court Service Division. He said he served Gardner with the protection order on August 12, 2025.

{¶5}    Hammond testified next. She said that Gardner messaged her on Facebook after the protection order was issued. Hammond stated that the Facebook account was not under Gardner's name, but Hammond knew it was Gardner.

{¶6}    The Facebook account name was "Lisa Lee." Hammond identified the

profile picture for Lisa Lee as Gardner. Hammond had blocked fake accounts made by Gardner in the past, so she suspected it was Gardner. When messaging Lisa Lee back, Hammond wrote, "Alisa." The Lisa Lee account responded, "[T]hat's my name." In other messages Hammond referenced the protection order and the Lisa Lee account responded with knowledge of the order. Hammond also testified that Gardner has a signature emoji. Hammond said that "the golf emoji is on everything that she writes." The golfer emoji is present in the messages Lisa Lee sent.

{¶7} Hammond ended her testimony by stating she received these messages "at work, sometimes [] at home." Her former place of work was in North College Hill. Hammond was not positive if North College Hill is in Hamilton County, Ohio. To the best of her knowledge, it is. Hammond also testified that her home is in Hamilton County, Ohio, and she received messages there.

{¶8} The State introduced five exhibits in its direct examination of Hammond. The defense initially objected to exhibit No. 5 stating the defense had not received it. The court granted a brief recess for counsel to review exhibit No. 5. After reviewing the document, the defense did not object to its inclusion.

{¶9} The State proffered exhibit No. 6 on redirect. Exhibit No. 6 consists of more screenshots of Facebook messages from Lisa Lee, but it also included a date. The defense objected arguing it never received exhibit No. 6. The court again granted a brief recess for counsel to review the exhibit. After the recess, counsel renewed his objection. The defense argued that the court should exclude the evidence because it changed the defense strategy. The trial court overruled the objection because the State proffered exhibit No. 6 to show the date Gardner sent the messages. The State did not admit exhibit No. 6 into evidence.

{¶10} Hammond reviewed exhibit No. 6. While the exhibit was still in front

of her, she read the date of the picture. The State asked, "[W]hen was that photo taken?" She responded, "August 15th, at 10:53 a.m."

{¶11} Next to testify was Watkins. Watkins had a romantic relationship with both Gardner and Hammond. He testified that a signature of Gardner's messages is "a golf man swinging emoji." He also testified that he knows Gardner creates fake Facebook accounts. He testified that Lisa Lee was one of those fake accounts.

{¶12} The State called Officer Nicole Peacock next. Officer Peacock testified that she worked for the Cheviot Police Department. On August 15, 2025, "Hammond came in to report that Alisa Gardner was continuing to contact her."[1]

{¶13} The State rested its case, and the defense made a Crim.R. 29 motion. The State dropped one of the charges against Gardner. The State kept the charge from August 15. The court denied the motion and the defense called Gardner to testify.

{¶14} Gardner testified that she only has two Facebook accounts. The first is under Alisa Gardner and the second is under Lee Wee. Gardner testified that the Lisa Lee account is not hers and she does not know who runs it. Gardner also admitted into evidence a post she made on her Alisa Gardner account. She posted "Like for real, people are that thirsty to make false pages of me,"[2] with a picture of a friend request from the Lisa Lee account.

{¶15} The defense rested and renewed its Crim.R. 29 motion. The court denied the motion and found Gardner guilty. Gardner received 180 days with 90 suspended, a $100 fine, and two years of community control. A month after her sentencing, the trial court suspended the remaining days in jail and reduced

---

[1] Hammond testified that Gardner sent her messages on August 18, 2025. This discrepancy can be explained by the State's two charges against Gardner. While the State dropped the second charge, Hammond was consistent in her testimony that she received messages after August 12.
[2] Gardner's Facebook post includes the same golfer emoji.

5

community control to one year. Gardner asked the court to stay her sentence pending appeal. The court denied her motion. Gardner now appeals bringing two assignments of error.

## II. Analysis

{¶16} In her first assignment of error, Gardner argues the court abused its discretion in its choice of sanction for the purported Crim.R. 16 violation. In her second assignment of error, she argues that her conviction is against the manifest weight of the evidence that she violated the protection order, or that the offense occurred in Hamilton County, Ohio.

### A. First Assignment of Error

{¶17} "We review a trial court's disposition of discovery issues for an abuse of discretion." *State v. Garrett*, 2026-Ohio-49, ¶ 47 (1st Dist.). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. However, "courts lack the discretion to make errors of law." *Id.* at ¶ 39.

{¶18} Discovery is governed by Crim.R. 16 and it is meant to provide evidence "'necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large.'" *State v. Branam*, 2020-Ohio-3101, ¶ 8 (1st Dist.), quoting Crim.R. 16(A). Under Crim.R. 16(L), if a violation occurs "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

{¶19} When determining what the appropriate sanction is, the trial court should determine "(1) whether the prosecution's failure to disclose was a willful

violation of Criminal Rule 16, (2) whether foreknowledge of the evidence would have benefitted the accused in preparation of his defense, and (3) whether the accused was prejudiced by the evidence[.]" *State v. Austin*, 2021-Ohio-3608, ¶ 11 (1st Dist.), citing *State v. Darmond*, 2013-Ohio-966, ¶ 35. If the trial court failed to properly cure a discovery violation, then we next "'consider whether any resulting error was harmless.'" *Id.*, quoting *State v. Newell*, 2019-Ohio-976, ¶ 42 (8th Dist.).

**{¶20}** In *Austin*, we held that the trial court abused its discretion when it failed to consider the *Darmond* factors. *Id.* at ¶ 13-14. We held the same in *State v. Hall*, 2021-Ohio-3017, ¶ 16 (1st Dist.) ("Because [the trial court] imposed a sanction without engaging in the sound reasoning process provided by *Darmond*, we find that the trial court abused its discretion.").

**{¶21}** When the State proffered exhibit No. 5, the defense initially objected. The court granted a brief recess to review the document. The defense objected again when the State proffered exhibit No. 6. Again, the court granted a recess for counsel to review the document. Counsel then renewed his objection to exhibit No. 6 "to the use of this evidence." Counsel offered that the date provided in exhibit No. 6 changed the trial strategy. The court overruled the objection because the State was only "using it to establish a date." The State did not enter exhibit No. 6 into evidence but the State had the witness review it during her testimony. Though the trial court arguably granted the recesses as sanctions, the trial court did not consider the factors of *Darmond* on the record. Generally, when a court fails to address the *Darmond* factors on the record, it is an abuse of discretion.

**{¶22}** However, any abuse of discretion here did not rise to the level of reversible error. For the error to be reversible, Gardner would have to show (1) that the error was so prejudicial it impacted the verdict, (2) the error was not harmless

beyond a reasonable doubt, and (3) the remaining evidence did not establish her guilt beyond a reasonable doubt. *See Austin*, 2021-Ohio-3608, at ¶ 14 (1st Dist.), citing *State v. Harris*, 2015-Ohio-166, ¶ 37, citing *State v. Morris*, 2014-Ohio-5052, ¶ 25-33. The trial court's actions here do not rise to this level.

**{¶23}** Gardner argues exhibit No. 5 prejudiced her because it was the only evidence offered by the State that showed the golfer emoji. Gardner did not preserve her objection. Counsel initially objected under Crim.R. 16, but the court granted a recess to allow defense counsel to review the exhibit. When the State entered exhibit No. 5 into evidence, counsel did not object. The Court explicitly asked, "[A]ny objection?" Counsel responded, "No, Your Honor." Gardner waived all but plain error on appeal. *See State v. Price*, 2015-Ohio-5043, ¶ 8 (9th Dist.). Gardner did not raise a plain error argument in her brief and "we decline to sua sponte fashion a plain error argument on [Gardner's] behalf and then address it." *See id.* at ¶ 9, citing *State v. McCrae*, 2015-Ohio-1803, ¶ 8 (9th Dist.).

**{¶24}** Even if counsel had preserved the issue, the admission of exhibit No. 5 was harmless. The State used the golfer emoji in exhibit No. 5 to prove it was Gardner sending the messages. While the State did offer its golfer emoji proof, it was not the only evidence on identity. Hammond testified that the Lisa Lee profile picture is Gardner. Additionally, the other exhibits show Hammond referring to Lisa Lee as Gardner and Lisa Lee responding to Gardner's name. The other messages show Lisa Lee had a full understanding of the protection order Hammond had against Gardner. This evidence offered by the State was enough to prove Gardner was the one messaging Hammond.

**{¶25}** While Gardner waived all but plain error for exhibit No. 5, counsel did preserve the objection to exhibit No. 6. Exhibit No. 6 was not introduced into

evidence; the State only proffered exhibit No. 6. Gardner argues that exhibit No. 6 prejudiced her because it proved the timing of the offense. Even if it had been admitted, any error was harmless. Two witnesses testified that Gardner sent the messages after she received the protection order on August 12.

{¶26} Hammond testified first. She stated she received messages on August 18, 2025, and on other days that she could not recall exactly. She knew she received the messages after Gardner received the protection order. Officer Peacock also testified to the date of the messages. Officer Peacock testified that Hammond came to the Cheviot police station on August 15 to report the violations. Hammond showed Officer Peacock messages she had received that day. Officer Peacock's testimony definitively established Gardner sent the messages after the order. Though Hammond's testimony was not specific to the August 15 date without exhibit No. 6, R.C. 2919.27 does not require a specific date; all the State had to prove was that Gardner sent the messages after August 12. The State did so through the testimony of both Hammond and Officer Peacock.

{¶27} Here, "the trial court's error had no impact on the verdict[.]" *See Austin*, 2021-Ohio-3608, at ¶ 15 (1st Dist.). Because any error was harmless, we overrule Gardner's first assignment of error.

### B. Second Assignment of Error

{¶28} In her second assignment, Gardner argues that her conviction was against the manifest weight of the evidence. The manifest weight of evidence standard refers to whether there is a "greater amount of credible evidence . . . to support one side of the issue rather than the other." (Emphasis omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The court must look to and weigh the "evidence and all reasonable inferences, consider the credibility of witnesses and determine[] whether .

9

. . the [fact finder] clearly lost its way and created such a manifest miscarriage of justice" to justify reversal. *Id.* This is an exceptional remedy that we reserve for cases where the evidence weighs heavily against the conviction. *State v. Cook*, 2024-Ohio-4771, ¶ 27 (1st Dist.). We "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21.

### 1. *Violating the Protection Order*

**{¶29}** Gardner first addresses the protection order. R.C. 2919.27(A)(2) provides, "No person shall recklessly violate the terms of any of the following: . . . [a] protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code[.]" Hammond's protection order required Gardner to not contact Hammond. Through the Lisa Lee account, Gardner did.

**{¶30}** The defense contends that Hammond did not have knowledge of Gardner and could not identify her over text. However, Hammond testified that the messaging had been going on for years. The messages came from several accounts, including the account in Gardner's name. In the exhibits offered at trial, the messages showed Hammond calling Gardner by name and Gardner responding on the Lisa Lee account. Hammond identified Lisa Lee's picture as Gardner. The Lisa Lee account admitted knowledge of the protective order Hammond repeatedly mentioned.

**{¶31}** Gardner also argues the State failed to prove the incident occurred after the protection order was issued in her "Issue Presented for Review and Argument." But Gardner does not address this argument in her brief. Regardless, Hammond and the officer that served Gardner the protection order both testified that Gardner received the protection order on August 12, 2025. Hammond and Officer Peacock both testified that Hammond received the messages after August 12. While Officer Peacock and Hammond testified about different dates, the testimony was consistent that the

offending messages came after the protection order was issued. Accordingly, the court's finding that Gardner violated the protection order after Gardner received the order was not against the manifest weight of the evidence.

### 2. Venue

{¶32} Gardner next argues the State did not establish venue. "Under Article I, Section 10, of the Ohio Constitution, a criminal defendant has the right to a trial in 'the county in which the offense is alleged to have been committed.'" *State v. Sullivan*, 2014-Ohio-3112, ¶ 7 (1st Dist.), quoting *State v. Headley*, 6 Ohio St. 3d 475, 477 (1983).

{¶33} Here, Hammond testified that she received messages from Gardner at her work and her home. While she was not positive that her workplace in North College Hill was in Hamilton County, her home certainly was. She testified that her home is in Cheviot and in Hamilton County, Ohio. She gave her address and provided enough evidence for the court to conclude the State established venue. The State also included Officer Peacock's testimony that she worked for the Cheviot Police Department, which Hammond testified was right near her house in Cheviot, Hamilton County, Ohio. Accordingly, the venue finding was not against the manifest weight of the evidence.

{¶34} We overrule Gardner's second assignment of error.

### III. Conclusion

{¶35} Having overruled both assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **MOORE, J.,** concur.

11